## UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:  Citifinancial Mortgage Company, Inc. v. Smith et al**

**Case Number:    3:06-cv-00899-MHT**

**Referenced Pleading:   Complaint -   doc. 1**

**This Notice of Correction was filed in the referenced case this date to correct the PDF documents attached to this notice.  Please see the correct PDF documents to this notice.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

**RECEIVED**

2006 OCT -5 P 12: 49

DISTRICT COURT

| | |
|---|---|
| CITIFINANCIAL MORTGAGE COMPANY, INC., n/k/a CITIMORTGAGE, INC., | ) ) ) |
| PLAINTIFF, | ) ) |
| V. | ) ) |
| ALPHA SMITH and VERA M. SMITH, | ) ) |
| DEFENDANTS. | ) |

CV: 3:06 CV 899 - M
H
T

---

## PETITION FOR ORDER COMPELLING ARBITRATION

---

**COMES NOW** CitiFinancial Mortgage Company, Inc., n/k/a Citimortgage, Inc., (or "CitiFinancial Mortgage"), by and through its undersigned counsel, and hereby petitions this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3 & 4, to enter an order directing Defendants Alpha and Vera M. Smith to submit any and all claims against Plaintiff to arbitration, in accordance with the Parties' agreement to do so. As grounds for this Petition, Plaintiff would show the following:

### I.    INTRODUCTION

1.    This is a Petition to Compel Arbitration, brought under Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending. In this action, Plaintiff CitiFinancial Mortgage seeks an Order compelling Defendants to submit to binding arbitration any and all claims Defendants may have against Plaintiff, pursuant to the Parties' arbitration agreement.

1503635



**SCANNED**

2.      On March 11, 2004, Defendant Alpha Smith entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC ("CitiFinancial"), which is an affiliate of Plaintiff CitiFinancial Mortgage.  In the arbitration agreement, Defendant Smith agreed to arbitrate any claims against CitiFinancial, as well as any claims against CitiFinancial's affiliates, including claims he may have regarding a past credit transaction.

3.      On April 17, 2006, Defendants Alpha and Vera Smith filed a lawsuit against CitiFinancial Mortgage and "The Associates"[1] in the Circuit Court of Macon County, Alabama, CV-06-84 (referred to herein as the "Underlying Action").  In the Underlying Action, the Smiths contend that in April, 2004, they made all of the payments due under a loan they had with CitiFinancial Mortgage, but that CitiFinancial Mortgage nonetheless claimed that the Smiths still owed $8,300 on the loan.  The Smiths filed suit against CitiFinancial Mortgage in state court, alleging fraud and negligence.

4.      Because Alpha Smith agreed to arbitrate claims against CitiFinancial and its affiliates -- including Plaintiff CitiFinancial Mortgage -- Plaintiff requests that this Court order the Smiths to arbitrate the claims filed in the Underlying Action, pursuant to the Parties' arbitration agreement.

## II.      PARTIES, JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Petition pursuant to the diversity statute, 28 U.S.C. § 1332, and Section 4 of the FAA.

6.      CitiFinancial Mortgage Company, Inc., n/k/a Citimortgage, Inc. by reason of merger, is a corporation organized and existing under the laws of the State of New York, with its

---

[1] The correct name for "The Associates" is Associates Home Equity Services, Inc., which later became known as CitiFinancial Mortgage Company, Inc.

principal place of business located within the State of Missouri. CitiFinancial Mortgage is, therefore, a citizen of the States of New York and Missouri. 28 U.S.C. § 1332(c)(1).

7.    Alpha Smith and Vera M. Smith are citizens of the State of Alabama.

8.    Based on the foregoing averments, there is complete diversity of citizenship between CitiFinancial Mortgage and the Smiths. 28 U.S.C. § 1332(a), (c).

9.    The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. The amount in controversy in a Petition to Compel Arbitration is determined by reference to the amount in issue in the Underlying Action on the claims subject to arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("[S]ection 4 provides for an order compelling arbitration only where the federal district court would have jurisdiction over a suit on the underlying dispute"); *accord We Care Hair Development, Inc. v. Engen*, 180 F.3d 838, 840-41 (7th Cir. 1999); *Webb v. Investacorp.*, 89 F.3d 252 (5th Cir. 1996).

10.    The amount in controversy in this case is well over $75,000, exclusive of interest and costs, as the Smiths seek an unlimited amount of compensatory and punitive damages in the Underlying Action. Indeed, punitive damages awarded in Alabama fraud actions frequently exceed $75,000. *See e.g., Jeter v. Orkin Exterminating Company, Inc.*, 832 So. 2d 25 (Ala. 2001) ($2,000,000 punitive damages awarded in fraud and breach of contract matter); *Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner*, 809 So. 2d 808 (Ala. 2001) ($200,000 punitive damage award in fraud and outrage matter); *Sparks v. Cash America International, Inc.*, 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); *Cooper & Co. v. Lester*, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); *Prudential Ballard Realty Co., Inc. v. Weatherly*, 792 So. 2d 1045 (Ala. 2000) (award of $750,000 of punitive damages in fraud action); *Chrysler*

*Corp. v. Schiffer*, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); *Life Insurance Company of Georgia v. Parker; supra*, ($150,000 award of punitive damages in insurance fraud matter); *Patel v. Patel*, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); *Talent Tree Personnel Srvs., Inc. v. Fleenor*, 708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); *American Pioneer Life v. Williamson*, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); *Union Sec. Life Ins. Co. v. Crocker*, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); *Life Ins. Co. of Georgia v. Johnson, supra*, ($3,000,000 award of punitive damages in insurance fraud action); *Hillcrest Center, Inc. v. Rone*, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); *First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); *Gallant v. Prudential Ins. Co. of America*, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); *Ford Motor Co. v. Sperau*, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); *Johnson v. Mercury Finance Co.*, CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); *Key v. Prudential Insurance Co., et al.*, CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); *Parham v. Foremost Insurance Co.*, 693 So. 2d 409 (Ala.

1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later remitted to $175,000.).

11.    In addition, compensatory damages awarded in Alabama fraud actions also often exceed $75,000. *See e.g. Prudential Ballard Realty Co., Inc. v. Weatherly*, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); *Jeter v. Orkin Exterminating Company, Inc.*, 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); *Oliver v. Towns*, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); *New Plan Realty Trust v. Morgan*, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); *Sparks v. Cash America International, Inc.*, 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); *Hare v. Mutual Savings Life*, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); *Mallard v. Countrywide Funding Corp.*, CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); *Ball v. ALFA Realty, Inc.*, CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); *Norwood v. Glen Lanes Realty Co.*, CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); *Gallant v. Prudential Ins. Co. of America*, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); *Sperau v. Ford Motor Co.*, CV-91-34, 1994 WL 180700 (LRP JURY)

(awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud).

12.    Based on the foregoing, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Further, this action is specifically authorized by Section 4 of the FAA, 9 U.S.C. § 4.

13.    Venue is proper in this district and division. Alpha Smith entered into the March 11, 2004 loan containing the arbitration agreement in Opelika, Alabama, and the Smiths filed the Underlying Action in the Circuit Court of Macon County, Alabama. Therefore, venue is proper in this district and division because the acts and events giving rise to the Underlying Lawsuit, as described more fully herein, occurred in this district and division.

## III.    FACTUAL AVERMENTS

14.    In their lawsuit filed in the Circuit Court of Macon County, Alabama, the Smiths assert claims against CitiFinancial Mortgage based on a loan transaction they entered into with First Capital Mortgage Corporation ("First Capital") in April of 1989. The Smiths allege that First Capital represented to them that they were to make monthly payments of $312.00 until April, 2004, when their loan would then be paid off. The Smiths claim that First Capital assigned their loan to Associates Financial Services, which ultimately became CitiFinancial Mortgage. They further allege that when they made what was supposed to be their last loan payment on April 17, 2004, they were erroneously informed by CitiFinancial Mortgage that they still owed $8,300. The Smiths assert that their loan payments were not properly applied, and they did not owe $8,300. They allege fraudulent misrepresentation, promissory fraud, negligent misrepresentation, and negligence. They seek an unlimited amount of compensatory and punitive damages, plus costs.

15.    On March 11, 2004, Alpha Smith entered into a loan transaction with CitiFinancial Corporation, LLC ("CitiFinancial"), and in connection with the loan transaction, he executed an arbitration agreement. (*See* Declaration of Teresa M. Baer, at Exhibit 1, attached hereto as Exhibit A.)   In the arbitration agreement, Alpha Smith agreed to arbitrate claims against CitiFinancial and any of its affiliates regarding any past, present or future credit transaction. It provides, in relevant part:

> In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.
>
> *   *   *
>
> "You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representative.
>
> **"We" or "Us" or "Our" means** the Lender under the Note listed above, **its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors**, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
>
> **"Credit Transaction" means any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.**
>
> "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us.  A Claim includes, without limitation, anything related to:
>
> - The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
> - Any Credit Transaction;

- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

**Special Acknowledgements. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appear an arbitration award are very limited.**

(Baer Dec., at Ex. 1 (underlined and bolded emphasis added; bolded emphasis in original.))

16. CitiFinancial Mortgage is an affiliate of CitiFinancial, and it was an affiliate of CitiFinancial as of March 11, 2004. (Baer Dec. ¶ 5.)

17. Furthermore, the March 11, 2004 loan transaction involved interstate commerce. CitiFinancial is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland. (Baer Dec. ¶ 3.) CitiFinancial is in the business of making consumer loans, and all of its loan operations necessarily involve interstate commerce. (*Id.* ¶ 4.) For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. (*Id.*) When a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an

account at Mellon Bank in Pittsburgh, Pennsylvania. (*Id.*) Further, when CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (*Id.*)

18.     Moreover, the March 11, 2004 loan transaction is governed by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.*, as well as numerous other federal consumer lending laws. Congress' power to regulate consumer lending transactions through TILA and other statutes derives from its power to regulate interstate commerce. Therefore, the loan transaction was necessarily interstate in nature because it was regulated by Congress pursuant to Congress' interstate commerce powers.

19.     Further, the Parties' arbitration agreement specifically states that "the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended." (Baer Dec., at Ex. 1.)

## IV.     THE FEDERAL ARBITRATION ACT APPLIES

20.     The FAA requires the enforcement of arbitration agreements where: (1) the arbitration agreement is part of a written contract which involves interstate commerce; and (2) the language of the arbitration provision covers the claims asserted by the plaintiffs in their lawsuit. By enacting the FAA, Congress declared a national policy in favor of arbitration by requiring courts to enforce arbitration agreements. *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). The primary purpose of the enactment of the FAA was to reverse years of judicial hostility to arbitration agreements. *Shearson/American Exp.*, 482 U.S. 220; *Scherk v. Alberto-Culber Co.*, 417 U.S. 506 (1974).

21.     Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending.  Section 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  Five days' notice in writing of such application shall be served upon the party in default.  Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure.  The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.  If the making of the agreement or the failure, neglect, or refusal to perform the same be an issue, the Court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the Court shall hear and determine such issue.  When such an issue is raised, the party alleged to be in default may, except in cases of admiralty, or on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the Court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.  If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.  If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the Court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.

22.     Section 4 specifically contemplates that parties, such as CitiFinancial Mortgage, which are aggrieved by another party's failure to arbitrate under a written agreement, may file an original petition in a United States District Court to compel such party to arbitrate all of such parties' claims.  And, importantly, the United States District Courts may not abstain from hearing this petition to compel arbitration.  *See Moses H. Cone*, 460 U.S. 1; *MS Dealer Serv. Corp. v.*

*Franklin*, 177 F.3d 942 (11th Cir. 1999); *Metropolitan Life v. Lockette*, 155 F.3d 1339 (11th Cir. 1998); *TranSouth Fin. Corp v. Bell*, 149 F.3d 1292 (11th Cir. 1998); *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362 (11th Cir. 1998); *Snap-on Tools, Inc. v. Mason*, 18 F.3d 1261 (5th Cir. 1994).

## A.    There Is A Written Agreement To Arbitrate.

23.    Based on the foregoing averments, it is clear that there is a written agreement to arbitrate.

## B.    Interstate Commerce Is Involved.

24.    Also based on the foregoing averments, it is equally clear that the March 11, 2004 loan transaction involved interstate commerce.

## C.    The Scope Of The Arbitration Agreement Covers The Claims Asserted In The Underlying Action.

25.    In addition to the existence of a written arbitration agreement and a transaction involving interstate commerce, there is no question that the scope of the arbitration agreement encompasses the claims the Smiths assert in the Underlying Action.

26.    The Smiths asserts claims against one of CitiFinancial's "affiliates" (CitiFinancial Mortgage), and their claims are related to a "past" "Credit Transaction" (the 1989 loan with CitiFinancial Mortgage).  Furthermore, the Smiths' claims in the Underlying Action are for fraud and negligence regarding the amount CitiFinancial Mortgage contends the Smiths owe on the 1989 loan.  Significantly, the arbitration agreement gives as specific examples of claims that it encompasses "[f]raud or misrepresentation," and "[a]ny act or omission by any of Us."  As such, there is no doubt that the claims the Smiths assert in the Underlying Action are encompassed in the scope of the March 11, 2004 arbitration agreement.

27.    Moreover, Vera Smith cannot claim that she is not bound by the arbitration agreement because she is a third party beneficiary to the March 11, 2004 loan transaction and/or her claims are inextricably intertwined with Alpha Smith's.

28.    Alternatively, if this Court determines that Vera Smith's claims are not due to be arbitrated, the claims of Alpha Smith are due to be determined in arbitration before the claims of Vera Smith may proceed in court. Indeed, courts have repeatedly recognized that where claims are based on the same operative facts, allowing litigation to proceed before arbitration would interfere with the clear federal policy favoring arbitration. *See, e.g., Moses H. Cone*, 460 U.S. 1; *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000) (where claims are based on the "same operative facts," forcing the party to try the non-arbitrable claims renders arbitration proceedings "redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration"). As one federal court recently explained, allowing related claims to proceed in litigation prior to arbitration interferes with the spirit and purpose of the FAA:

> [I]f the court were to attempt to address any of the plaintiff's claims, even those not directly involving the [arbitrable claims], the court would have to deal with issues involving the [arbitrable claims] and would risk interfering with the arbitrator's duties. Such a trespass into the arbitrator's province would violate the letter and spirit of the Federal Arbitration Act. Therefore, the court finds that it would be wise to allow the arbitrable issues in this case to be decided before the case proceeds any further, so as not to impair the arbitrator's ability to decide the arbitrable issues.

*Air Freight Services, Inc. v. Air Cargo Transport, Inc.*, 919 F. Supp. 321, 324 (N.D. Ill. 1996); *see also Merchant v. Weissman*, 1997 WL 695674, at *3 (N.D. Ill. Nov. 3, 1997) ("If this Court were to allow some portion of the current litigation to proceed while the remaining portions were submitted to arbitration, there is a very real possibility that the collateral estoppel effects of the litigation would impair many of the same issues with respect to the alleged misrepresentations that would be before the arbitrator.")

## V.    **PRAYER FOR RELIEF**

**WHEREFORE**, CitiFinancial Mortgage requests that the Court enter an Order in its favor, pursuant to Section 4 of the FAA, compelling arbitration of the Smiths' claims in the Underlying Action, in accordance with the Parties' arbitration agreement.    CitiFinancial Mortgage further requests that, pursuant to Section 3 of the FAA, the Court enter an Order enjoining the Smiths from prosecuting all claims in the Underlying Action, pursuant to 28 U.S.C. § 2283, to protect and effectuate this Court's judgment.

In the event this Court determines that only Alpha Smith's claims are due to be arbitrated, then CitiFinancial Mortgage requests that this Court order Alpha Smith to arbitrate his claims prior to Vera Smith proceeding with the litigation of her claims.    CitiFinancial Mortgage further requests that to protect and effectuate this Court's judgment, and pursuant to Section 3 of the FAA and 28 U.S.C. § 2283, the Court enter an Order enjoining Alpha Smith from prosecuting all claims in the Underlying Action and enjoining Vera Smith from prosecuting all claims in the Underlying Action until completion of Alpha Smith's arbitration.

Respectfully submitted,

Reid S. Manley (MANLR6842)
Elizabeth B. Shirley (BOSQE5958)

Attorneys for Plaintiff CitiFinancial
Mortgage Company, Inc., n/k/a
Citimortgage, Inc.

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following by directing same to their office address through first-class, United States mail, postage prepaid, on this the 5th day of October, 2006.

Tyrone C. Means
Charles James, II
Thomas, Means & Gillis & Seay, P.C.
P.O. Drawer 5058
3121 Zelda Court
Montgomery, Alabama 36103-5058

OF COUNSEL