IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CITIFINANCIAL MORTGAGE COMPANY,<br>INC., n/k/a CITIMORTGAGE, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CV: 3:06cv899-MHT |
| | ) | |
| ALPHA SMITH and VERA M. SMITH, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT ALPHA
SMITH**

---

**COMES NOW** CitiFinancial Mortgage Company, Inc., n/k/a Citimortgage, Inc.,

("Plaintiff" or "CitiFinancial Mortgage"), and hereby submits this Motion for Summary

Judgment on its Petition to Compel Arbitration of claims alleged against it by Defendant Alpha

Smith ("Defendant").[1]  In support of this Motion, CitiFinancial Mortgage submits the exhibits

attached hereto, the supporting memorandum filed contemporaneously herewith, and further

shows as follows:

        **I.**      **STATEMENT OF UNDISPUTED MATERIAL FACTS**

      1.     On March 11, 2004, Defendant Alpha Smith entered into a loan transaction and

arbitration agreement with CitiFinancial Corporation, LLC ("CitiFinancial"), which is an affiliate

of Plaintiff CitiFinancial Mortgage.  (See Declaration of Teresa M. Baer, at Exhibit 1, attached

hereto as Exhibit B).  In the arbitration agreement, Defendant Smith agreed to arbitrate any

---

[1] At this time, CitiFinancial Mortgage is not moving for summary judgment as to
Defendant Vera Smith, but it reserves its right to do so.

claims against CitiFinancial, as well as any claims against CitiFinancial's affiliates, including claims he may have regarding a past credit transaction.

2.      The arbitration agreement provides, in relevant part:

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

\* \* \*

"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representative.

**"We" or "Us" or "Our" means** the Lender under the Note listed above, **its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors**, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

**"Credit Transaction" means any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.**

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;

- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

**Special Acknowledgements. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appear an arbitration award are very limited.**

(See Ex. B, at Ex. 1 (underlined and bolded emphasis added; bolded emphasis in original.))

3.     The March 11, 2004 loan transaction involves interstate commerce. Indeed, CitiFinancial is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland, (Ex. B, ¶ 3), and Defendants aver that they are residents of the State of Alabama. Further, CitiFinancial funds its loans made in Alabama, including the March 11, 2004 loan at issue, with capital sources from outside the State of Alabama. (Ex. B. ¶ 4.) When a CitiFinancial loan transaction is closed, such as the March 11, 2004 loan at issue, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. (Id.) When CitiFinancial makes a loan to a customer, including Defendant Alpha Smith, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (Id.)

4.     On April 17, 2006, Alpha and Vera Smith (husband and wife) filed a lawsuit against Plaintiff CitiFinancial Mortgage in the Circuit Court of Macon County, Alabama, styled

Vera M. Smith and Alpha Smith v. First Capital Mortgage Corporation, The Associates, CitiFinancial Mortgage and Fictitious Defendants "A-Z", Civil Action Number CV-06-84 ("Underlying Action"). (A copy of the Complaint in the Underlying Action is attached hereto as Exhibit A). In the Underlying Action, the Smiths assert claims against CitiFinancial Mortgage based on a loan transaction they entered into with First Capital Mortgage Corporation ("First Capital") in April of 1989. The Smiths allege that First Capital represented to them that they were to make monthly payments of $312.00 until April, 2004, when their loan would then be paid off. The Smiths claim that First Capital assigned their loan to Associates Financial Services, which ultimately became CitiFinancial Mortgage. CitiFinancial Mortgage is an affiliate of CitiFinancial, and it was an affiliate of CitiFinancial as of March 11, 2004. (See Ex. B, ¶ 5.) They further allege that when they made what was supposed to be their last loan payment on April 17, 2004, they were erroneously informed by CitiFinancial Mortgage that they still owed $8,300. The Smiths assert that their loan payments were not properly applied, and they did not owe $8,300. They allege fraudulent misrepresentation, promissory fraud, negligent misrepresentation, and negligence. They seek an unlimited amount of compensatory and punitive damages, plus costs.

5.    The scope of the March 11, 2004 arbitration agreement is broad and encompasses the claims Defendants assert in the Underlying Action. The arbitration agreement generally encompasses claims in connection with any past, present, or future loan transaction with CitiFinancial or any of its affiliates. The arbitration agreement defines "Credit Transaction" as "any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You." (Ex. B., at Ex. 1.) It defines "Us" as the Lender (CitiFinancial) and "its past, present or

future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents directors, and officers (whether acting in their corporate or individual capacity)." (Id.) It gives as specific examples of claims that it encompasses "[f]raud or misrepresentation," and "[a]ny act or omission by any of Us." Significantly, the Smiths' claims in the Underlying Action are for fraud and negligence regarding the amount the Smiths owe CitiFinancial Mortgage (an affiliate of CitiFinancial) concerning the 1989 loan (a past loan).

## II.   ARGUMENT

1.      The instant action is authorized by Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*. Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending.

2.      This Court also has diversity jurisdiction over this case, as CitiFinancial Mortgage is organized and existing under the laws of the State of New York, with its principal place of business in the State of Missouri, and Alpha and Vera Smith aver that they are citizens of the State of Alabama.

3.      In addition, the amount in controversy is over $75,000, exclusive of interest and costs. The amount in controversy in a petition to compel arbitration is determined by reference to the amount at issue in the Underlying Action on the claims subject to arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n.32 (1983) Defendants seek an unlimited amount of compensatory and punitive damages in the Underlying Action. As such, there is no doubt that this Court has jurisdiction over this action.

4.      Furthermore, all of the prerequisites under the FAA for enforcement of arbitration agreements are satisfied in this matter because (1) there is a valid written agreement to arbitrate;

(2) the transaction clearly involves interstate commerce; (3) and the scope of the agreement encompasses Defendants' claims asserted in the Underlying Action.

5.      Finally, CitiFinancial Mortgage has not waived its right to arbitration. (See, e.g., Exhibit C, attached hereto, and Plaintiffs' Memorandum in Support of Motion for Summary Judgment as to Defendant Alpha Smith, filed contemporaneously herewith.)

**WHEREFORE**, Plaintiff moves the Court to enter an order compelling Defendant Alpha Smith to arbitrate his claims asserted in the Underlying Action.

Respectfully submitted,

s/Elizabeth B. Shirley
Reid S. Manley (MANLR6842)
Elizabeth B. Shirley (BOSQE5958)

Attorneys for Plaintiff CitiFinancial
Mortgage Company, Inc., n/k/a
Citimortgage, Inc.

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that all counsel are registered in the CM/ECF system and should receive electronic notice.

s/Elizabeth B. Shirley
OF COUNSEL

# EXHIBIT A

PAGE 5/5 * RCVD AT 4/21/2006 10:05:27 AM [Central Daylight Time] * SVR:BHM-RIGHTFAX/14 * DNIS:5675 * CSID:9726524 +43 * DURATION (mm-ss):01-33

### IN THE CIRCUIT COURT OF
### MACON COUNTY, ALABAMA

VERA M. SMITH and ALPHA          *
SMITH,                           *
                                 *
     Plaintiffs,                 *
                                 *
vs.                              *   CIVIL ACTION NO. CV-06-_84_
                                 *
FIRST CAPITAL MORTGAGE           *
CORPORATION; THE ASSOCIATES;     *   JURY TRIAL DEMANDED
CITIFINANCIAL MORTGAGE;          *
And Fictitious Defendants        *
"A-Z", whether singular          *
or plural, as those other persons, *
corporations, firms or other entities *
whose wrongful conduct caused    *
or contributed to cause the injuries *
and damages to the Plaintiff, all of *
whose true and correct names are *
unknown to Plaintiff at this time, *
but will be added by amendment   *
when ascertained,                *
                                 *
     Defendants.                 *

## COMPLAINT

Vera M. Smith and Alpha Smith ("Plaintiffs") file this Complaint and state:

## STATEMENT OF THE PARTIES

1. Plaintiff Vera M. Smith is over the age of nineteen (19) years and is a resident citizen of Macon County, Alabama.

2. Plaintiff Alpha Smith is over the age of nineteen (19) years and is a resident citizen of Macon County, Alabama.

1

PAGE 1/7 · RCVD AT 4/21/2006 10:07:19 AM [Central Daylight Time] · SVR:BHM-RIGHTFAX/15 · DNIS:5675 · CSID:9726524163 · DURATION (mm-ss):02-22

3. Defendant First Capital Mortgage Corporation ("First Capital") is an Alabama corporation doing business by agent in Macon County, Alabama.

4. Defendants The Associates and Citi Financial Mortgage( "Citi") are foreign corporations doing business by agent in Macon County, Alabama.

5. Fictitious Defendants "A-Z" whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained. The term "Defendants" as used herein shall mean First Capital, The Associates, Citi and all fictitious parties, collectively.

## STATEMENT OF THE FACTS

6. In or around April of 1989, Plaintiffs desired to execute a second mortgage on their home, located at 2913 McFadden Drive, Tuskegee Institute, Alabama 36088. Plaintiffs met with a representative of a First Capital, who represented to Plaintiffs that they would lend them the sum of $21,498.00 at the yearly interest rate of 15.75%. First Capital further represented to Plaintiffs that they were to make monthly payments in the amount of $312.00 per month until April 17, 2004.

7. Relying on First Capital's representations, Plaintiffs agreed to the second mortgage and borrowed $21,498.00 from First Capital and began making payments as mandated by the promissory note. On or about April 11, 1989, First Capital assigned Plaintiffs' mortgage to Associates Financial Services. The Associates were acquired by Citigroup on November 30, 2000 and Citi Financial Mortgage became the note holder of Plaintiffs' mortgage. First Capital, The Associates and Citi all represented to Plaintiffs that if they abided by the terms of the

APR-21-06 08:58 FROM:CITIFINANCIAL MORT LEGAL    ID:9726524163    PAGE 1/7

Smith, Vera M. & Alpha    \\bhm-dc1\pub\Apps\TimeMatters\Docs\April 2006\April 24\40887.pdf    40887

promissory note, then the second mortgage would be paid off by April 17, 2004. After the

Plaintiffs made what was supposed to be the final payment on the loan in 2004, the Plaintiffs

discovered that they still owed over $8,300 to the Defendants. The Defendants did not

accurately or properly apply Plaintiffs' payments to their account and have refused to abide by

the terms of the promissory note despite their representations. First Capital was responsible for

drawing up the terms of the promissory note.

    8.  The representations of the Defendants were false and they knew they were false.

    9.  Plaintiffs discovered the fraud within two (2) years of filing this lawsuit.

    10.  Defendant entered into a pattern or practice of fraudulent conduct, which included the

fraud practiced on the Plaintiffs. The conduct by Defendants was intentional, gross, wanton,

malicious and/or oppressive.

<u>COUNT ONE</u>

    11.  Plaintiffs re-allege all prior paragraphs of this complaint as if set out here in full.

    12.  In or around April of 1989, Plaintiffs desired to execute a second mortgage on their home,

located at 2913 McFadden Drive, Tuskegee Institute, Alabama 36088. Plaintiffs met with a

representative of a First Capital, who represented to Plaintiffs that they would lend her the sum of

$21,498.00 at the yearly interest rate of 15.75%. First Capital further represented to Plaintiffs that

they were to make monthly payments in the amount of $312.00 per month until April 17, 2004.

    13.  Relying on First Capital's representations, Plaintiffs agreed to the second mortgage and

borrowed $21,498.00 from First Capital and began making payments as mandated by the promissory

note. On or about April 11, 1989, First Capital assigned Plaintiffs' mortgage to Associates Financial

Services. The Associates were acquired by Citigroup on November 30, 2000 and Citi Financial

3

Smith, Vera M. & Alpha                    \\bhm-dc1\pub\Apps\TimeMatters\Docs\April 2006\April 24\40887.pdf                    40887

PAGE 3/7 * RCVD AT 4/21/2006 10:07:19 AM [Central Daylight Time] * SVR:BHM-RIGHTFAX/15 * DNIS:5675 * CSID:9726524163 * DURATION (mm-ss):02-22

Mortgage became the note holder of Plaintiffs's mortgage. First Capital, The Associates and Citi all represented to Plaintiffs that if they abided by the terms of the promissory note, then the second mortgage would be paid off by April 17, 2004. After the Plaintiffs made what was supposed to be the final payment on the loan in 2004, the Plaintiffs discovered that she still owed over $8,300 to the Defendants. The Defendants did not accurately or properly apply Plaintiffs' payments to their account and have refused to abide by the terms of the promissory note despite their representations. First Capital was responsible for drawing up the terms of the promissory note.

14. The above stated representations made by the Defendants were false and Defendants knew that they were false.

15. Plaintiffs relied upon the false representations made by Defendants by buying the home and making payments.

16. As a proximate consequence of Defendants' conduct, Plaintiffs were injured as follows: Plaintiffs paid for a second mortgage that was not as promised; Plaintiffs lost the value of their payments; Plaintiffs lost interest on their payments; Plaintiffs underwent undue financial hardship; Plaintiffs have suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs were otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

### COUNT TWO

17. Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

18. Defendants intended to deceive Plaintiffs and had no intention of performing as promised.

4

Smith, Vera M. & Alpha    \\bhm-dc1\pub\Apps\TimeMatters\Docs\April 2006\April 24\40887.pdf    40887

19. As a result of Defendants' conduct, Plaintiffs changed their position, entered into the second mortgage and made payments.

20. As a proximate consequence, Plaintiffs were injured and damaged as aforesaid

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

## COUNT THREE

21. Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

22. At the aforesaid time and place, Defendants innocently, recklessly, negligently or wantonly made the aforementioned misrepresentations and/or concealed the material facts.

23. As a proximate consequence, Plaintiffs were injured and damaged as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

## COUNT FOUR

24. Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

25. Defendants had a duty to execute and deliver the second mortgage as promised and to abide by its terms without damage to the Plaintiffs.

26. Defendants negligently performed their duties to Plaintiffs.

27. As a proximate consequence, Plaintiffs have been damaged as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury deems reasonable, and may award, plus costs.

## COUNT FIVE

28. Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

5

29. Defendants wantonly performed the above described duties owed to Plaintiffs.

30. As a proximate consequence, Plaintiffs were injured and damaged as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

## COUNT SIX

31. Plaintiffs re-allege all prior paragraphs of the Complaint as if set out here in full.

32. Defendants breached their contract with Plaintiffs by failing to abide by the terms of their contract with Plaintiffs.

33. As a proximate consequence, Plaintiffs were injured and damaged as aforesaid.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as a jury deems reasonable, and may award, plus costs.

Respectfully Submitted,

TYRONE C. MEANS (MEA003)
CHARLES JAMES, II (JAM028)
**Attorneys for Plaintiffs**

**OF COUNSEL:**
**THOMAS, MEANS & GILLIS & SEAY, P.C.**
P.O. Drawer 5058
3121 Zelda Court
Montgomery, AL 36103-5058
Telephone:    (334) 270-1033
Facsimile:    (334) 260-9396

_**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE**_

Of counsel

6

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

CITIFINANCIAL MORTGAGE COMPANY,    )
INC., n/k/a CITIMORTGAGE, INC.,    )
                                   )
    PLAINTIFF,              )
                                   )
V.                                 )       CV: _____
                                   )
VERA M. SMITH and ALPHA SMITH,     )
                                   )
    DEFENDANTS.             )

## DECLARATION OF TERESA M. BAER

CITY OF BALTIMORE      )

STATE OF MARYLAND     )

Pursuant to 28 U.S.C. § 1746, I, Teresa M. Baer, state as follows:

1.     My name is Teresa M. Baer. I am over the age of 19 years and I am competent to testify regarding the matters contained herein. I make this Declaration based upon my own personal knowledge and my review of relevant records, true and correct copies of which are attached hereto.

2.     I am authorized by CitiFinancial Corporation, LLC (or "CitiFinancial") to execute documents on its behalf. I am familiar with the operations of CitiFinancial and its affiliates, including CitiFinancial Mortgage Company, Inc. (which has merged into Citimortgage, Inc.).

3.     CitiFinancial is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland.

4.     CitiFinancial is in the business of making consumer loans. All of CitiFinancial's loan operations necessarily involve interstate commerce, including Alpha Smith's March 11,

2004 loan transaction with CitiFinancial. For example, CitiFinancial funds its loans made in Alabama with capital sources from outside the State of Alabama. When a CitiFinancial loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. Further, when CitiFinancial makes a loan to a customer, including Alabama customers, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system.

5.    CitiFinancial Mortgage Company, Inc. (which has merged into Citimortgage, Inc.) is an affiliate of CitiFinancial, and it was an affiliate of CitiFinancial as of March 11, 2004.

6.    CitiFinancial keeps true and correct copies of the loan agreements entered into between CitiFinancial, on the one hand, and borrowers, on the other hand. According to the business records of CitiFinancial, Alpha Smith closed a loan with CitiFinancial on March 11, 2004. Attached to this declaration as Exhibit 1 is a true and correct copy of the Disclosure Statement, Note and Security Agreement and Arbitration Agreement, executed in relation to the March 11, 2004 loan. These documents were prepared, signed, and are maintained in the regular course of the business of CitiFinancial, and it is and was the regular practice of CitiFinancial to prepare, have signed, and maintain such documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Done this 3 day of October, 2006.

Teresa M. Baer

2

# EXHIBIT 1 TO EXHIBIT A

## Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| ALPHA SMITH<br>2913 MCFABBEN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 | 2352<br><br>Date of Loan<br>03/11/2004 |

| ANNUAL PERCENTAGE RATE The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Borrower. | Amount Financed The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 28.77 % | $ 7,062.07 | $ 7,879.73 | $ 14,941.80 |

**Payment Schedule:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 249.03 | MONTHLY BEGINNING 04/11/2004 |
| | $ | |
| | $ | |
| | $ | |

**Security:** If checked, Borrower is giving a security interest in:

- ☐ Motor Vehicle   ☐ Mobile Home
- ☐ Real Property   ☒ Other:MISC PERS PROP

**Late Charge:** If a payment is late, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00.

**Prepayment:** If Borrower pays off early, Borrower may be entitled to a refund of part of the finance charge.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Additional Information:**
INTEREST SURCHARGE
$ 120.00

### INSURANCE DISCLOSURE

**Required Insurance:** If Borrower obtains credit that is secured by Borrower's interest in improved real property (including a mobile or manufactured home that is part of real property), then Lender requires Borrower to provide fire and extended coverage for the replacement value of the improvements. If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the collateral protection coverage or Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

**Optional Insurance:** Credit life insurance, credit disability insurance, credit personal property insurance, involuntary unemployment insurance, and any other insurance products that are not required per the above paragraph are optional to Borrower and are not required in order to obtain credit. If Borrower desires voluntarily to purchase any of these optional insurance products, Borrower must sign below and in other required documents and will receive an insurance certificate or policy detailing the coverage terms and conditions that apply to the insurance. Borrower should refer to the terms and conditions contained in the applicable insurance certificate or policy issued for the exact description of benefits and exclusions. Borrower is encouraged to inquire about coverage and refund provisions.

If the initial amount of coverage for credit life insurance and/or credit personal property insurance set forth in Borrower's insurance certificate or policy is equal to the Total of Payments stated above, it may exceed the amount necessary to pay off Borrower's loan at any given time. Any excess insurance coverage amount that may become payable will be paid to the appropriate party as designated in the insurance certificate or policy. Borrower acknowledges that if optional credit personal property insurance is purchased, Borrower's property coverage under other policies such as homeowner's or renter's insurance may be adversely affected.

Borrower's regular monthly loan payment if Borrower elects not to purchase insurance will be $ 237.21 .

**Termination of Optional Insurance:** Borrower may cancel any of the optional insurance products obtained at Lender's office at any time upon Borrower's written request for cancellation to Lender. If Borrower is in default under the terms of this agreement, Borrower authorizes the insurer to terminate any and/or all optional insurance products upon Lender's request. Upon termination of any insurance for any reason, Borrower authorizes and directs that the insurer deliver the premium refund, if any, to Lender, which will apply it to Borrower's outstanding loan balance. Borrower hereby irrevocably and unconditionally assigns to Lender any right, title or interest which Borrower may have in any premium refund ("Refund"). Such assignment is absolute and not intended as security. Borrower acknowledges and agrees that the Refund shall be the sole property of Lender and that Borrower shall have no interest in the Refund. Lender agrees to pay to Borrower any amount by which the Refund received by Lender exceeds the outstanding loan balance.

I/we request the following insurance:

| Cost/Premium: | Insurance Type: | Insurance Term (in mos.): | First Borrower's Signature | Date |
|---|---|---|---|---|
| $ 379.88 | SINGLE CREDIT LIFE | 60 | _Gary L Smith_ | 3/11/04 |
| $NONE | | | | |
| $NONE | | | Second Borrower's Signature | Date |
| $NONE | | | | |
| $NONE | | | | |

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** Borrower promises to pay to the order of Lender the Total of Payments shown above in the substantially equal, consecutive installments shown above, except that any appropriate adjustments will be made to the first and final payments, until the Total of Payments is fully paid. Upon the final payment date or the acceleration thereof, the entire outstanding balance of this loan shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines. Lender, at its option, may collect interest from and after the final payment date upon the then unpaid Principal amount of this Disclosure Statement, Note and Security Agreement, at (a) the maximum rate permitted by then applicable law or (b) the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

(Intentionally left blank)

Borrower's Initials _____

ALPHA SMITH                                                          2352          03/11/2004

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time. If Borrower prepays in full before the final payment date or if Lender accelerates the unpaid balance because of Borrower's default, Borrower will be given a refund of the unearned interest portion of the Finance Charge in accordance with the Rule of 78th's if the original term of this loan is 61 months or less or in accordance with the actuarial method if the original term of this loan is greater than 61 months, figured to the nearest scheduled payment date. However, if this loan is renewed or refinanced by Lender within 120 days from the date of loan, Borrower will be given a refund of the unearned interest portion of the Finance Charge computed on a pro rata basis as of the date of such renewal or refinancing. No refund of less than $1.00 will be made. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments. With respect to the interest surcharge, if Borrower prepays the loan in full within 90 days of the date of the loan, Lender shall refund or credit borrower with a pro-rata portion of the surcharge, except that Lender may retain up to $25.00. If Borrower prepays the loan in full after 90 days of the date of the loan, no refund of the surcharge will be made by Lender.

**SECURITY AGREEMENT:**

☐ A. If this box is checked, this loan is unsecured.

☒ B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

2. Other Property: See Exhibit A attached hereto and made a part hereof

☐ C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at _____
See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to other vehicle or mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If the Property includes a motor vehicle or a mobile home worth $300.00 or more and the amount of the loan is $300.00 or more, not including insurance charges, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGES:** If any payment is in default 10 days or more after the scheduled payment date, Borrower may be required to pay a late charge of 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, on each payment in default. A late charge will not exceed $ 100.00. Lender may, at its option, waive any delinquency charge or portion thereof without waiving its right to require a delinquency charge with regard to any other late payment.

**NSF CHECKS:** Lender may charge a fee not more than the greater of either $ 20.00 or an amount equal to the actual charge by the depository in institution for the return of unpaid or dishonored instruments to Lender.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance, less a refund of unearned Finance Charges, at once. If the debt is referred for collection to an attorney who is not Lender's salaried employee, and the original principal amount or amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default and court costs.

**EFFECTS OF DEFAULT:** If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it in any way it wishes, subject to applicable State law. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can use any or all Borrowers upon default of any Borrower.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the cost of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; court costs; and the costs of removing any superior liens or claims on the Property.

Borrower's Initials _____

ALPHA SMITH

If the proceeds of the sale are not sufficient to satisfy the unpaid balance, earned finance charges, and expenses, subject to applicable Alabama law, Borrower agrees to pay any remaining amount upon demand. If Borrower has left other property in the repossessed property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.
Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to the Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.
Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** Borrower has been advised by Lender that the overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

**AUTHORIZATION TO USE CREDIT REPORT:** By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

---

**ARBITRATION.** Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

---

The following notice applies only if this box is checked. ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement, and authorizes the disbursements stated therein.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESSES:                                SIGNED:

_____                _____ (Seal)
                                         ALPHA SMITH                -Borrower

_____                _____ (Seal)
                                                                    -Borrower

_____                _____ (Seal)
                                                                    -Borrower

                                         CITIFINANCIAL CORPORATION, LLC

                                         By: _____ 03/11/2004 14:06:52
                                         (Name and Title)

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)  _____    _____ (Seal) _____
Signature                         Date       Signature                         Date

## OPTIONAL PROTECTION CHOICES – Credit Insurance, Personal Loan

Customer (s) ALPHA  SMITH

App # 1729

Date 03/11/2004

These are optional protection plans and their purchase has no effect on our loan decision.
The information below assumes the cost of the credit insurance plan(s) purchased will be financed with your loan.

| Credit Insurance | Description of Benefits (please refer to product brochures for more detail) | Approximate Total Premium (Financed) | Approximate Increase in Monthly Payment | Insurance Chosen (Customer's Initial*) Borrower | Co-Borrower |
|---|---|---|---|---|---|
| Single Credit Involuntary Unemployment | For Primary Borrower Only - The unemployment coverage pays or reduces the monthly payment if you lose your job through no fault of your own. | $N/A. | $N/A. | | N/A |
| Joint Credit Involuntary Unemployment | For Both Borrowers - The unemployment coverage pays or reduces the monthly payment if you lose your job through no fault of your own. | $N/A | $N/A. | | |
| Single Credit Disability | For Primary Borrower Only - The disability coverage can pay or reduce your monthly loan payment in the event you become sick, hurt or disabled due to a qualified disability and have been off of work and under a doctor's care for 7 to 30 days. | $N/A | $N/A | | N/A |
| Joint Credit Disability | For Both Borrowers - The disability coverage can pay or reduce your monthly loan payment in the event you become sick, hurt or disabled due to a qualified disability and have been off of work and under a doctor's care for 7 to 30 days. | $N/A | $N/A | | |
| Single Credit Life | For Primary Borrower Only - If you die, the life coverage pays off or reduces the balance of your loan. If there is any excess benefit, it will be paid to the beneficiary you designate for this purpose. | $ 379.89 | $ 12.02 | | N/A |
| Joint Credit Life | For Both Borrowers - If you die, the life coverage pays off or reduces the balance of your loan. If there is any excess benefit, it will be paid to the beneficiary you designate for this purpose. | $N/A | $N/A | | |
| Credit Property | If an item we are using for security for the loan is damaged, destroyed or stolen under the terms of your certificate, the personal property coverage pays a benefit, up to $ _N/A._ , that will help you replace the item(s). | $N/A | $N/A | | N/A |

All coverage is subject to meeting eligibility requirements. The term of your coverage will be the same as the term of your loan
( _60_ months), subject to the maximum age and other termination provisions in your certificate.
(mo)

*Customer(s) must initial the options chosen.

I/We are not eligible to purchase or have elected not to purchase any of the optional protection plans. _____ / _____
                                                                                                              Customer(s) Initials

21240.2 ©2003  03/11/2004 13:55:17                      Original (Branch)    Copy (Customer)

**JOINT LIFE INSURANCE BENEFIT:** If joint life coverage was requested and an additional premium paid for it, we will pay the benefit amount of insurance in force to the Creditor when the first of you die and after we receive due proof of death at our administrative offices. In the event of your simultaneous deaths, only one such benefit will be paid.

**AMOUNT OF LIFE INSURANCE:** Your life is initially insured for the lesser of: 1) the Maximum $100,000; or 2) an amount equal to the Initial Debt (excludes unearned finance charges) Plus One Monthly Loan Payment.
If the Initial Debt Plus One Monthly Loan Payment, is less than the Maximum, the amount of Insurance decreases so that it remains equal to your scheduled unpaid debt (excluding unearned finance charges) plus one monthly loan payment.
If the Initial Debt Plus One Monthly Loan Payment, is greater than the Maximum, the amount of insurance decreases and is only a portion of the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment, and is determined as follows:

**CREDITOR-DEBTOR INSURANCE CERTIFICATE**
**DECREASING TERM LIFE BENEFITS**
**SINGLE LIFE/JOINT LIFE/SINGLE DISABILITY**

AHL 36272-2
Page 1 of 3

72068　　　　Original (Branch)　　Copy (Customer)　　Copy (Ins. Co.)

Case 3:06-cv-00899-MHT-CSC    Document 1-5    Filed 10/05/2006    Page 6 of 11

First, the ratio of the Maximum to the Initial Debt Plus One Monthly Loan Payment will be determined. That ratio will then be applied to the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment. For example, if the Maximum were $100,000 and the Initial Debt Plus One Monthly Loan Payment, is $150,000, the ratio would be 2/3. Therefore, if the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment, is $120,000, we would pay a benefit of $80,000 (i.e. 2/3 of $120,000).

If the Initial Debt Plus One Monthly Loan Payment is greater than the maximum and a premium for the excess amount is charged, we have the right to refund the excess premium. However, we will be liable for any claim arising prior to the date of such refund.

**MAXIMUM LIMITS OF LIABILITY:** If you are currently covered under another certificate of insurance issued under the same group policy mentioned above in connection with another debt, making the total amount of life insurance in excess of the Maximum Amount of Life Insurance shown in the Schedule, the insurance in excess will be canceled. You will receive a refund or credit of the premium paid in excess.

**SUICIDE:** If you die as the result of suicide or self-destruction, while sane or insane, within one year of the Effective Date of this insurance, a death benefit will not be paid. A refund of the unearned life insurance premium will be made.

## DISABILITY INSURANCE BENEFIT

If a disability premium is shown in the Schedule, we will pay a benefit for disability suffered by you during the term of your insurance resulting from Accidental Injury or caused by Sickness in the manner and to the extent shown below.

**ELIGIBILITY:** This disability coverage is provided only if you are actively at work at least 30 hours per week on the date the debt is incurred and truthfully answer "NO" to the health question(s) in this Certificate of Insurance.

**SINGLE DISABILITY INSURANCE BENEFIT:** We will pay a Monthly Benefit to the Creditor after we receive due proof of your total disability at our administrative offices.

**MONTHLY BENEFIT:** If, while insured, you become Totally Disabled, and remain Totally Disabled continuously for the number of days indicated in the Waiting Period shown on the Schedule, we will pay a benefit for each day of disability. This benefit will be calculated at the rate of 1/30 of the Monthly Indemnity shown in the Schedule. Benefits will commence on the first day of such disability but in no event will payments continue beyond the date the insurance terminates. Only one benefit per day will be payable during any period of Total Disability even though Total Disability is caused by or results from both Accidental Injury and Sickness.

The total amount of monthly disability benefits payable in the event of Total Disability, as defined below, will not exceed the aggregate of the Monthly Indemnity shown in the Schedule multiplied by the number of months remaining in the insurance term, at the time disability commences. If it is found that you have paid premium for insurance in excess of the maximum amount of insurance, we will not, by reason of that maximum, reduce or restrict benefits due you by reason of a valid claim, if the claim is incurred prior to a refund of premium for excess coverage.

**DEFINITIONS:** "Sickness" means illness or disease which commences during the term of insurance and which results in Total Disability. "Accidental Injury" means accidental bodily injury sustained by you during the term of insurance and which results in Total Disability. "Sickness" and "Accidental Injury" definitions are both subject to the pre-existing conditions exclusion (f), as defined below. "Total Disability" during the first 12 consecutive months of disability means that because of Accidental Injury or Sickness you are unable to perform any duties of your occupation. For the remainder of the period of disability, "Total Disability" means that you are unable to perform any duties of any other occupation for which you are qualified by reason of education, training or experience. During any period of disability, you must be under the care of a legally qualified physician or surgeon other than yourself, the joint debtor, or a member of your immediate family.

**EXCLUSIONS:** This insurance does not cover any disability resulting from: (a) normal pregnancy; (b) intentionally self-inflicted injuries; (c) flight in nonscheduled aircraft; (d) war, declared or undeclared; or (e) conditions which manifested themselves to you by requiring medical diagnosis or treatment within 6 months preceding the Effective Date of this insurance and which caused loss within the 6 months following the Effective Date of this insurance; however, any disability commencing after that time resulting from such conditions shall be covered.

## STANDARD PROVISIONS-DISABILITY INSURANCE

**NOTICE OF CLAIM:** You must send a written notice to us or our agent regarding your disability claim within 20 days after disability starts or as soon as reasonably possible. The notice should include sufficient information to identify you as an Insured Debtor.

**CLAIM FORMS:** Upon receipt of your notice, we will send you the necessary forms for filing a claim. If you do not receive the forms within 15 working days, you can simply send us a written statement covering your disability. The statement should be signed by your physician and should include the dates as well as the nature and extent of your disability. Thereafter, claim forms are required to be filed every 30 days, while disability continues.

**PROOF OF DISABILITY:** The proof of total disability signed by your physician must be sent to us no later than 90 days after the disability ends. If it is not possible to submit proof within 90 days, we will not reduce or deny a claim for this reason, if the proof is filed as soon as reasonably possible.
In any event, the necessary proof must be given no later than one year from the date the disability commenced unless you are legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** Provided written proof of disability is submitted, all benefits to which you are entitled will be payable by us to the Creditor each month. Any benefits remaining at the end of your period of disability will be paid as soon as we receive proper written proof.

PHYSICAL EXAMINATION: We, at our own expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION: No legal action may be brought by you to recover on this insurance within 60 days after written proof of disability has been given. No such action may be taken after 3 years from the time proof of disability is given.

## GENERAL PROVISIONS

AGE LIMIT: If either of you misstate your age and have attained age 67 prior to the date your debt was incurred the insurance is void. In such instance, all premiums paid will be refunded. However, if either of you correctly stated your age to be above the maximum, and a Certificate of Insurance was issued in error, we have the right to terminate the coverage and refund the full premium, provided that such refund is made prior to any claim.

PAYMENT OF CLAIMS: Any benefits paid will be paid to the Creditor to reduce or extinguish your unpaid debt. Whenever the amount of insurance exceeds the unpaid debt, any excess will be paid to a beneficiary, other than the Creditor, named by you, or to your estate. We will pay the excess, if any, by check or draft.

PREMIUM: The amount of premium charged by the Creditor for this insurance may not legally exceed that paid by the Creditor to us, on your behalf.

AUTOPSY: We, at our own expense, have the right to have an autopsy performed, unless it is not permitted by law.

TERMINATION OF INSURANCE: This insurance automatically terminates on the earliest of the following dates: 1) when you request cancellation of the insurance; 2) when the loan is paid off early, renewed or refinanced; 3) on the original scheduled maturity date of your loan; 4) upon repossession of the collateral given as security for the loan or by the loan or any portion of it being charged off or required to be charged off by law; 5) upon 6 months without a payment being made on your loan; or 6) the Expiration Date shown in the Schedule.

REFUND OF PREMIUM: If the insurance is terminated prior to the original scheduled Expiration Date, the unearned portion of the prepaid premium will be refunded to You and/or credited to your account. Any such refund will be calculated according to the "Rule of 78". Refunds of less than $1.00 will not be made.

CONFORMITY WITH STATE STATUTES: Any provision of this Certificate of Insurance which, on its Effective Date, is in conflict with the statutes of the state in which it was issued is changed to conform to the minimum standards of those statutes.

ENTIRE CONTRACT: The policy including the certificate, any endorsements, and any attached papers, constitutes the entire contract of insurance. All statements made by the policyholder or by you will be deemed representations and not warranties. No statements made by you will be used in any contest unless a copy of the statement is or has been furnished to you or your beneficiary.

INCONTESTABILITY: Insurance under this Certificate of Insurance, in an amount up to and including $1,000 will not be contested, except for nonpayment of premiums or fraud, after it has been in force for ninety days from its Effective Date. Insurance under this Certificate of Insurance, in an amount over $1,000 or more, will not be contested, except for nonpayment of premiums or fraud, after it has been in force during Your lifetime for one year from its Effective Date. No statement made by or on behalf of You relating to your insurability will be used in a contest of his insurance unless it is contained in a written statement signed by you, and a copy has been furnished to you and/or your beneficiary.

TRANSFER PROCEDURE: We reserve the right to enter into an agreement with another insurer to transfer the liability under this Certificate without prior notice to You. We shall be relieved of all liability transferred, and the assuming insurer shall be directly and solely liable to You for those obligations or risks.

President

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

| BORROWER(S) | LENDER |
|---|---|
| ALPHA SMITH<br><br>2913 MCFABBEN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA  AL  36801 |
| Date of Note    03/11/2004 | Account Number ⬛2352 |

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.
"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us.  A Claim includes, without limitation, anything related to:
  * The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
  * Any Credit Transaction;
  * Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
  * Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
  * Any act or omission by any of Us;
  * Fraud or misrepresentation, including claims for failing to disclose material facts;
  * Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
  * Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
  * Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.
"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| JAMS | American Arbitration Association | National Arbitration Forum |
|---|---|---|
| 1920 Main Street, Suite 300 | 335 Madison Avenue, Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site.  You and We may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction.  Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment.  You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction.  If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

**Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:
  * Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
  * Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim.  Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00.  In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim

**Additional Terms.**
**Administration of Arbitration.** Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.
**Place of Arbitration.** The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.
**Appeal.** Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.
**No Class Actions/No Joinder of Parties.** You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.
**Depositions.** After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions shall be resolved by the arbitrator.

Borrower's Initials: _____

Costs. Unless the Rules of the Administrator require allocation more beneficial to You, the costs of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

Governing Law. This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

Interpretation. Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

Severability. If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.

Survival. This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

Special Acknowledgments. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.

The Arbitration Agreement is executed as of the "Date of Note" written above.

_____    Borrower        _____    Borrower
ALPHA SMITH

                                                      By: _____
                                                          (Lender Name and Title)
_____
Non-Obligor

### Identification of Security Form (Valuation of Personal Property)

In connection with the security agreement I (we) hereby identify the personal property securing
a loan together with a total of the replacement value of the property defined below.

Name of Borrower(s): ALPHA SMITH
Account Number: ●●●●●●●●2352

**1. ITEMS PURCHASED WITH THE PROCEEDS OF THE CREDIT TRANSACTION**

| # | ITEM | DESCRIPTION | REPLACEMENT VALUE |
|---|------|-------------|-------------------|
|   |      |             |                   |
|   |      |             |                   |

**2. ITEMS CURRENTLY OWNED BY THE BORROWER(S)**

I (we) own __3__ television sets and __4__ radios and I (we) agree to offer
as security the television and/or radios listed and described below (if any).          Borrower(s) Initials

| # | ITEM | DESCRIPTION | REPLACEMENT VALUE |
|---|------|-------------|-------------------|
| 2 | TELEVISIONS >25" SCREEN | 36" SANYO AND DVD PLAYER | 2,000 |
| 1 | COMPUTER & ACCESSORIES | GATEWAY AND ALL ACCESSORIES | 4,000 |

I (we) hereby affirm that the replacement value of goods used as security on this credit transaction is $_____6,000_____

Date: 03/11/2004  Borrower(s) Signature: _____

Borrower(s) Signature: _____

# ITEMIZATION OF AMOUNT FINANCED

01-0173

| | |
|---|---|
| **Borrower(s)** | **Lender** |
| ALPHA SMITH<br>2913 MCFABBEN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 |

| Account Number |
|---|
| ▇▇▇2352 |
| **Date of Loan** |
| 03/11/2004 |

## ITEMIZATION OF AMOUNT FINANCED:$    7,879.73

$___2,006.85___ Amount given to you directly (check to you)    $_____120.00___ Prepaid finance charge

$_____NONE_____ Amount paid on your prior account

$___5,872.88___ Amount paid to others on your behalf (sum of schedules A through C)

### SCHEDULE A: PREMIUMS PAID TO INSURANCE COMPANIES

$_____379.88_____ Credit Life

$_____NONE_____ Credit Disability

$_____NONE_____ Property Insurance

$_____NONE_____ Automobile Single Interest

$_____NONE_____ _____

$_____ _____

### SCHEDULE B: PAID TO PUBLIC OFFICIALS

$_____NONE_____ License/title/registration fees

$_____NONE_____ Recording Fee

$_____ Stamps/intangible/transfer tax

$_____NONE_____ Release Fee

$_____ _____

### SCHEDULE C: PAID TO OTHERS

| AMOUNT | PAYEE NAME | REASON |
|---|---|---|
| 2,716.00 | AMEX | PAYOFF OF ACCOUNT |
| 305.00 | CAP 1 BANK | PAYOFF OF ACCOUNT |
| 472.00 | HHLD BANK | PAYOFF OF ACCOUNT |
| 2,000.00 | ALPHA SMITH | OTHER |

ANY AMOUNTS LISTED IN SCHEDULE C, PAYABLE AS BROKER FEES, APPLICATION FEE, SETTLEMENT FEE, OVERNIGHT DELIVERY FEE, FLOOD CERTIFICATION FEE OR TAX SERVICE FEE ARE INCLUDED IN PREPAID FINANCE CHARGE AND NOT IN THE AMOUNT FINANCED.

21232-1.1 6/2003                    Original (Branch)    Copy (Customer)

# EXHIBIT C

# BURR & FORMAN LLP

ATTORNEYS AND COUNSELORS

3100 WACHOVIA TOWER
420 NORTH 20TH STREET
BIRMINGHAM, ALABAMA 35203

(205) 251-3000
(205) 458-5100 (FAX)
www.burr.com

Elizabeth B. Shirley
Direct Dial: (205) 458-5186
Direct Fax: (205) 244-5705
Email: bshirley@burr.com

September 27, 2006

Charles James, II
Thomas, Means, Gillis & Seay, P.C.
P.O. Drawer 5058
3121 Zelda Court
Montgomery, Alabama 36103-5058
Telephone: 334-270-1033

Re:  *Vera M. Smith and Alpha Smith v. First Capital Mortgage Corporation, et al.,*
     *CV-06-84*

Dear Charles:

We represent Defendant CitiFinancial Mortgage Company, Inc. (or "Defendant") in the above-referenced action. We have just learned that Plaintiff Alpha Smith entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC ("CitiFinancial") on March 11, 2004. The March 11, 2004 arbitration agreement encompasses the claims that the Plaintiffs assert against Defendant (which is an affiliate of CitiFinancial) in the above-referenced action. A copy of the March 11, 2004 loan and the arbitration agreement is enclosed herewith.

Defendant intends to exercise its right to compel Plaintiffs to bring their claims asserted in the above-referenced action in arbitration. As such, your clients do not need to respond to Defendant's First Set of Interrogatories, Requests for Production and Requests for Admission, which were served on August 16, 2006 -- before Defendant was aware of the arbitration agreement enclosed herewith.

Please let us know if your clients will agree to arbitrate their claims in the above-referenced matter, or whether Defendant will have to proceed with formal action. Thank you for your consideration of this matter.

Sincerely,

*Beth Shirley*

Elizabeth B. Shirley

cc:  Reid S. Manley

Enclosures

ALABAMA    •    GEORGIA    •    MISSISSIPPI    •    TENNESSEE

1504247

## Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| ALPHA SMITH<br>2913 MCFARREN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 | XXXXX2352 |
| | | Date of Loan<br>03/11/2004 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 28.77 % | $ 7,062.07 | $ 7,879.73 | $ 14,941.80 |

**Payment Schedule:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 249.03 | MONTHLY BEGINNING 04/11/2004 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower is giving a security interest in:

☐ Motor Vehicle    ☐ Mobile Home
☐ Real Property    ☒ Other: MISC PERS PROP

**Late Charge:** If a payment is late, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00.

**Prepayment:** If Borrower pays off early, Borrower may be entitled to a refund of part of the finance charge.

**Additional Information:**
INTEREST SURCHARGE
$ 120.00

### INSURANCE DISCLOSURE

**Required Insurance:** If Borrower obtains credit that is secured by Borrower's interest in improved real property (including a mobile or manufactured home that is part of real property), then Lender requires Borrower to provide fire and extended coverage for the replacement value of the improvements. If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the collateral protection coverage or Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

**Optional Insurance:** Credit life insurance, credit disability insurance, credit personal property insurance, involuntary unemployment insurance, and any other insurance products that are not required per the above paragraph are optional to Borrower and are not required in order to obtain credit. If Borrower desires voluntarily to purchase any of these optional insurance products, Borrower must sign below and in the other required documents and will receive an insurance certificate or policy detailing the coverage terms and conditions that apply to the insurance. Borrower should refer to the terms and conditions contained in the applicable insurance certificate or policy issued for the exact description of benefits and exclusions. Borrower is encouraged to inquire about coverage and refund provisions.

If the initial amount of coverage for credit life insurance and/or credit personal property insurance set forth in Borrower's insurance certificate or policy is equal to the Total of Payments stated above, it may exceed the amount necessary to pay off Borrower's loan at any given time. Any excess insurance coverage amount that may become payable will be paid to the appropriate party as designated in the insurance certificate or policy. Borrower acknowledges that if optional credit personal property insurance is purchased, Borrower's property coverage under other policies such as homeowner's or renter's insurance may be adversely affected.

Borrower's regular monthly loan payment if Borrower elects not to purchase insurance will be $ 237.21 .

**Termination of Optional Insurance:** Borrower may cancel any of the optional insurance products obtained at Lender's office at any time upon Borrower's written request for cancellation to Lender. If Borrower is in default under the terms of this agreement, Borrower authorizes the insurer to terminate any and/or all optional insurance products upon Lender's request. Upon termination of any insurance for any reason, Borrower authorizes and directs that the insurer deliver the premium refund, if any, to Lender, which will apply it to Borrower's outstanding loan balance. Borrower hereby irrevocably and unconditionally assigns to Lender any right, title or interest which Borrower may have to any premium refund ("Refund"). Such assignment is absolute and not intended as security. Borrower acknowledges and agrees that the Refund shall be the sole property of Lender and that Borrower shall have no interest in the Refund. Lender agrees to pay to Borrower any amount by which the Refund received by Lender exceeds the outstanding loan balance.

I/we request the following insurance:

| Cost/Premium: | Insurance Type: | Insurance Term (in mos.): | First Borrower's Signature | Date |
|---|---|---|---|---|
| $ 379.88 | SINGLE CREDIT LIFE | 60 | *[signature]* | 3/11/04 |
| $ NONE | | | | |
| $ NONE | | | Second Borrower's Signature | Date |
| $ NONE | | | | |
| $ NONE | | | | |

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** Borrower promises to pay to the order of Lender the Total of Payments shown above in the substantially equal, consecutive installments shown above, except that any appropriate adjustments will be made to the first and final payments, until the Total of Payments is fully paid. Upon the final payment date or the acceleration thereof, the entire outstanding balance of this loan shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines. Lender, at its option, may collect interest from and after the final payment date upon the then unpaid Principal amount of this Disclosure Statement, Note and Security Agreement, at (A) the maximum rate permitted by then applicable law or (B) the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

(Intentionally left blank)

Borrower's Initials *[signature]*

ALPHA SMITH                                                               2352     03/11/2004

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time. If Borrower prepays in full before the final payment date or if Lender accelerates the unpaid balance because of Borrower's default, Borrower will be given a refund of the unearned interest portion of the Finance Charge in accordance with the Rule of 78th's if the original term-of-this-loan is 61 months or less or in accordance with the actuarial method if the original term of this loan is greater than 61 months, figured to the nearest scheduled payment date. However, if this loan is renewed or refinanced by Lender within 120 days from the date of loan, Borrower will be given a refund of the unearned interest portion of the Finance Charge computed on a pro rata basis as of the date of such renewal or refinancing. No refund of less than $1.00 will be made. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments. With respect to the interest surcharge, if Borrower prepays the loan in full within 90 days of the date of the loan, Lender shall refund or credit borrower with a pro-rata portion of the surcharge, except that Lender may retain up to $25.00; if Borrower prepays the loan in full after 90 days of the date of the loan, no refund of the surcharge will be made by Lender.

**SECURITY AGREEMENT:**

☐ A. If this box is checked, this loan is unsecured.

☒ B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

2. Other Property: **See Exhibit A attached hereto and made a part hereof**

☐ C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at
_____. See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If the Property includes a motor vehicle or a mobile home worth $300.00 or more and the amount of the loan is $300.00 or more, not including insurance charges, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGES:** If any payment is in default 10 days or more after the scheduled payment date, Borrower may be required to pay a late charge of 5.0% of the unpaid amount of the payment or $ 10.00, whichever is more, on each payment in default. A late charge will not exceed $ 100.00. Lender may, at its option, waive any delinquency charge or portion thereof without waiving its right to require a delinquency charge with regard to any other late payment.

**NSF CHECKS:** Lender may charge a fee not more than the greater of either $ 20.00 or an amount equal to the actual charge by the depository institution for the return of unpaid or dishonored instruments to Lender.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance, less a refund of unearned Finance Charges, at once. If the debt is referred for collection to an attorney who is not a Lender's salaried employee, and the original principal amount or amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default and court costs.

**EFFECTS OF DEFAULT:** If Borrower defaults, Lender may deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peaceably enter any place where the Property is located and take possession of it in any way it wishes, subject to applicable State law. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can use any or all Borrowers upon default of any Borrower.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the cost of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; court costs; and the costs of removing any superior liens or claims on the Property.

ALPHA SMITH                                              2352        03/11/200(

If the proceeds of the sale are not sufficient to satisfy the unpaid balance, earned finance charges, and expenses, subject to applicable Alabama law, Borrower agrees to pay any remaining amount upon demand. If Borrower has left other property in the repossessed property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to the Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** Borrower has been advised by Lender that the overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

**AUTHORIZATION TO USE CREDIT REPORT:** By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

---

**ARBITRATION.** Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

---

The following notice applies only if this box is checked. ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement, and authorizes the disbursements stated therein.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESSES:                                          SIGNED:

_____                   _____ (Seal)
                                                         ALPHA SMITH                      -Borrower

_____                   _____ (Seal)
                                                                                              -Borrower

_____                   _____ (Seal)
                                                                                              -Borrower

                                                         CITIFINANCIAL CORPORATION, LLC

_____                   By: _____
                                                         (Name and Title)          03/11/2004 14:06:52

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)          _____ (Seal)
Signature              Date                      Signature              Date

---

CitiFinancial Corporation, LLC
AL 25721-17  7/2003              Original (Branch)      Copy (Customer)                    Page 3 of 3

# OPTIONAL PROTECTION CHOICES – Credit Insurance, Personal Loan

Customer (s): ALUZA SMITH

Date __03/11/2004__     App # ____29

*These are optional protection plans and their purchase has no effect on our loan decision.*
*The information below assumes the cost of the credit insurance plan(s) purchased will be financed with your loan.*

| Credit Insurance | Description of Benefits (please refer to product brochures for more detail) | Approximate Total Premium (Financed) | Approximate Increase in Monthly Payment | Insurance Chosen (Customer's Initials) Borrower | Co-Borrower |
|---|---|---|---|---|---|
| Single Credit Involuntary Unemployment | For Primary Borrower Only - The unemployment coverage pays or reduces the monthly payment if you lose your job through no fault of your own. | $N/A | $N/A | | N/A |
| Joint Credit Involuntary Unemployment | For Both Borrowers - The unemployment coverage pays or reduces the monthly payment if you lose your job through no fault of your own. | $N/A | $N/A | | |
| Single Credit Disability | For Primary Borrower Only - The disability coverage can pay or reduce your monthly loan payment in the event you become sick, hurt or disabled due to a qualified disability and have been off of work and under a doctor's care for 7 to 30 days. | $N/A | $N/A | | N/A |
| Joint Credit Disability | For Both Borrowers - The disability coverage can pay or reduce your monthly loan payment in the event you become sick, hurt or disabled due to a qualified disability and have been off of work and under a doctor's care for 7 to 30 days. | $ | $ | | |
| Single Credit Life | For Primary Borrower Only - If you die, the life coverage pays off or reduces the balance of your loan. If there is any excess benefit, it will be paid to the beneficiary you designate for this purpose. | $ 379.89 | $ 13.02 | [signature] | N/A |
| Joint Credit Life | For Both Borrowers - If you die, the life coverage pays off or reduces the balance of your loan. If there is any excess benefit, it will be paid to the beneficiary you designate for this purpose. | $N/A | $N/A | | |
| Credit Property | If an item we are using for security for the loan is damaged, destroyed or stolen under the terms of your certificate, the personal property coverage pays a benefit, up to $ _N/A_ , that will help you replace the item(s). | $N/A | $N/A | | |

All coverage is subject to meeting eligibility requirements. The term of your coverage will be the same as the term of your loan ( _____ months), subject to the maximum age and other termination provisions in your certificate.

*Customer(s) must initial the options chosen.
I/We are not eligible to purchase or have elected not to purchase any of the optional protection plans.

_____ (s) _____     _____ Customer(s) Initials

Original (Branch)     Copy (Customer)

21340-2 ©2003 03/11/2004 13:55:17

---

**JOINT LIFE INSURANCE BENEFIT:** If joint life coverage was requested and an additional premium paid for it, we will pay the benefit amount of insurance in force to the Creditor when the first of you die and after we receive due proof of death at our administrative offices. In the event of your simultaneous deaths, only one such benefit will be paid.

**AMOUNT OF LIFE INSURANCE:** Your life is initially insured for the lesser of: 1) the Maximum $100,000; or 2) an amount equal to the Initial Debt (excludes unearned finance charges) Plus One Monthly Loan Payment.
If the Initial Debt Plus One Monthly Loan Payment, is less than the Maximum, the amount of insurance decreases so that it remains equal to your scheduled unpaid debt (excluding unearned finance charges) plus one monthly loan payment.
If the Initial Debt Plus One Monthly Loan Payment, is greater than the Maximum, the amount of insurance decreases and is only a portion of the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment, and is determined as follows:

**CREDITOR-DEBTOR INSURANCE CERTIFICATE**
**DECREASING TERM LIFE BENEFITS**
**SINGLE LIFE/JOINT LIFE/SINGLE DISABILITY**

72068          Original (Branch)     Copy (Customer)     Copy (Ins. Co.)          AHL 36272-2
Page 1 of 3

First, the ratio of the Maximum to the Initial Debt Plus One Monthly Loan Payment will be determined. That ratio will then be applied to the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment. For example, if the Maximum were $100,000 and the Initial Debt Plus One Monthly Loan Payment, is $150,000, the ratio would be 2/3. Therefore, if the scheduled unpaid debt (excludes unearned finance charges) plus one monthly loan payment, is $120,000, we would pay a benefit of $80,000 (i.e. 2/3 of $120,000).

If the Initial Debt Plus One Monthly Loan Payment is greater than the maximum and a premium for the excess amount is charged, we have the right to refund the excess premium. However, we will be liable for any claim arising prior to the date of such refund.

MAXIMUM LIMITS OF LIABILITY: If you are currently covered under another certificate of insurance issued under the same group policy mentioned above in connection with another debt, making the total amount of life insurance in excess of the Maximum Amount of Life Insurance shown in the Schedule, the insurance in excess will be canceled. You will receive a refund or credit of the premium paid in excess.

SUICIDE: If you die as the result of suicide or self-destruction, while sane or insane, within one year of the Effective Date of this insurance, a death benefit will not be paid. A refund of the unearned life insurance premium will be made.

## DISABILITY INSURANCE BENEFIT

If a disability premium is shown in the Schedule, we will pay a benefit for disability suffered by you during the term of your insurance resulting from Accidental Injury or caused by Sickness in the manner and to the extent shown below.

ELIGIBILITY: This disability coverage is provided only if you are actively at work at least 30 hours per week on the date the debt is incurred and truthfully answer "NO" to the health question(s) in this Certificate of Insurance.

SINGLE DISABILITY INSURANCE BENEFIT: We will pay a Monthly Benefit to the Creditor after we receive due proof of your total disability at our administrative offices.

MONTHLY BENEFIT: If, while insured, you become Totally Disabled, and remain Totally Disabled continuously for the number of days indicated in the Waiting Period shown on the Schedule, we will pay a benefit for each day of disability. This benefit will be calculated at the rate of 1/30 of the Monthly Indemnity shown in the Schedule. Benefits will commence on the first day of such disability but in no event will payments continue beyond the date the insurance terminates. Only one benefit per day will be payable during any period of Total Disability even though Total Disability is caused by or results from both Accidental Injury and Sickness.

The total amount of monthly disability benefits payable in the event of Total Disability, as defined below, will not exceed the aggregate of the Monthly Indemnity shown in the Schedule multiplied by the number of months remaining in the insurance term, at the time disability commences. If it is found that you have paid premium for insurance in excess of the maximum amount of insurance, we will not, by reason of that maximum, reduce or restrict benefits due you by reason of a valid claim, if the claim is incurred prior to a refund of premium for excess coverage.

DEFINITIONS: "Sickness" means illness or disease which commences during the term of insurance and which results in Total Disability. "Accidental Injury" means accidental bodily injury sustained by you during the term of insurance and which results in Total Disability. "Sickness" and "Accidental Injury" definitions are both subject to the pre-existing conditions exclusion (f), as defined below. "Total Disability" during the first 12 consecutive months of disability means that because of Accidental Injury or Sickness you are unable to perform any duties of your occupation. For the remainder of the period of disability, "Total Disability" means that you are unable to perform any duties of any other occupation for which you are qualified by reason of education, training or experience. During any period of disability, you must be under the care of a legally qualified physician or surgeon other than yourself, the joint debtor, or a member of your immediate family.

EXCLUSIONS: This insurance does not cover any disability resulting from: (a) normal pregnancy; (b) intentionally self-inflicted injuries; (c) flight in nonscheduled aircraft; (d) war, declared or undeclared; or (e) conditions which manifested themselves to you by requiring medical diagnosis or treatment within 6 months preceding the Effective Date of this insurance and which caused loss within the 6 months following the Effective Date of this insurance; however, any disability commencing after that time resulting from such conditions shall be covered.

## STANDARD PROVISIONS-DISABILITY INSURANCE

NOTICE OF CLAIM: You must send a written notice to us or our agent regarding your disability claim within 20 days after disability starts or as soon as reasonably possible. The notice should include sufficient information to identify you as an insured Debtor.

CLAIM FORMS: Upon receipt of your notice, we will send you the necessary forms for filing a claim. If you do not receive the forms within 15 working days, you can simply send us a written statement covering your disability. The statement should be signed by your physician and should include the dates as well as the nature and extent of your disability. Thereafter, claim forms are required to be filed every 30 days, while disability continues.

PROOF OF DISABILITY: The proof of total disability signed by your physician must be sent to us no later than 90 days after the disability ends. If it is not possible to submit proof within 90 days, we will not reduce or deny a claim for this reason, if the proof is filed as soon as reasonably possible.
In any event, the necessary proof must be given no later than one year from the date the disability commenced unless you are legally incapable of doing so.

TIME OF PAYMENT OF CLAIMS: Provided written proof of disability is submitted, all benefits to which you are entitled will be payable by us to the Creditor each month. Any benefits remaining at the end of your period of disability will be paid as soon as we receive proper written proof.

**PHYSICAL EXAMINATION:** We, at our own expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

**LEGAL ACTION:** No legal action may be brought by you to recover on this insurance within 60 days after written proof of disability has been given. No such action may be taken after 3 years from the time proof of disability is given.

## GENERAL PROVISIONS

**AGE LIMIT:** If either of you misstate your age and have attained age 67 prior to the date your debt was incurred the insurance is void. In such instance, all premiums paid will be refunded. However, if either of you correctly stated your age to be above the maximum, and a Certificate of Insurance was issued in error, we have the right to terminate the coverage and refund the full premium, provided that such refund is made prior to any claim.

**PAYMENT OF CLAIMS:** Any benefits paid will be paid to the Creditor to reduce or extinguish your unpaid debt. Whenever the amount of insurance exceeds the unpaid debt, any excess will be paid to a beneficiary, other than the Creditor, named by you, or to your estate. We will pay the excess, if any, by check or draft.

**PREMIUM:** The amount of premium charged by the Creditor for this insurance may not legally exceed that paid by the Creditor to us, on your behalf.

**AUTOPSY:** We, at our own expense, have the right to have an autopsy performed, unless it is not permitted by law.

**TERMINATION OF INSURANCE:** This insurance automatically terminates on the earliest of the following dates: 1) when you request cancellation of the insurance; 2) when the loan is paid off early, renewed or refinanced; 3) on the original scheduled maturity date of your loan; 4) upon repossession of the collateral given as security for the loan or by the loan or any portion of it being charged off or required to be charged off by law;  5) upon 6 months without a payment being made on your loan; or 6) the Expiration Date shown in the Schedule.

**REFUND OF PREMIUM:** If the insurance is terminated prior to the original scheduled Expiration Date, the unearned portion of the prepaid premium will be refunded to You and/or credited to your account. Any such refund will be calculated according to the "Rule of 78". Refunds of less than $1.00 will not be made.

**CONFORMITY WITH STATE STATUTES:** Any provision of this Certificate of Insurance which, on its Effective Date, is in conflict with the statutes of the state in which it was issued is changed to conform to the minimum standards of those statutes.

**ENTIRE CONTRACT:** The policy including the certificate, any endorsements, and any attached papers, constitutes the entire contract of insurance. All statements made by the policyholder or by you will be deemed representations and not warranties. No statements made by you will be used in any contest unless a copy of the statement is or has been furnished to you or your beneficiary.

**INCONTESTABILITY:** Insurance under this Certificate of Insurance, in an amount up to and including $1,000 will not be contested, except for nonpayment of premiums or fraud, after it has been in force for ninety days from its Effective Date. Insurance under this Certificate of Insurance, in an amount over $1,000 or more, will not be contested, except for nonpayment of premiums or fraud, after it has been in force during Your lifetime for one year from its Effective Date. No statement made by or on behalf of You relating to your insurability will be used in a contest of his insurance unless it is contained in a written statement signed by you, and a copy has been furnished to you and/or your beneficiary.

**TRANSFER PROCEDURE:** We reserve the right to enter into an agreement with another insurer to transfer the liability under this Certificate without prior notice to You. We shall be relieved of all liability transferred, and the assuming insurer shall be directly and solely liable to You for those obligations or risks.

*Pat B Dalley*

President

 **ARBITRATION AGREEMENT**

THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

| BORROWER(S) | LENDER |
|---|---|
| ALPHA SMITH<br><br>2913 MCFARREN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA  AL  36801 |
| Date of Note    03/11/2004 | Account Number    352 |

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply: "You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives. "We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity). "Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You. "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defense to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| JAMS<br>1920 Main Street, Suite 300<br>Irvine, CA 92610<br>www.jamsadr.com | American Arbitration Association<br>335 Madison Avenue, Floor 10<br>New York, NY 10017-4605<br>www.adr.org | National Arbitration Forum<br>P.O. Box 50191<br>Minneapolis, MN 55405<br>www.arbitration-forum.com |
|---|---|---|

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We also agree to submit to final, binding arbitration not only all Claims, but also any claims or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

**Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only as individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim

**Additional Terms.**

**Administration of Arbitration.** Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

**Place of Arbitration.** The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

**Appeal.** Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

**No Class Actions/No Joinder of Parties.** You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.

**Depositions.** After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Borrower's Initials: _____

**Costs.** Unless the Rules of the Administrator require allocation more beneficial to You, the cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

**Governing Law.** This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Interpretation.** Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

**Severability.** If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.

**Survival.** This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

The Arbitration Agreement is executed as of the "Date of Note" written above.

_____    Borrower
ALPHA SMITH

_____    Borrower
By: _____
(Lender Name and Title)

_____
Non-Obligor



**EXHIBIT A**

**Identification of Security Form (Valuation of Personal Property)**

In connection with the security agreement I (we) hereby identify the personal property securing a loan together with a total of the replacement value of the property defined below.

Name of Borrower(s): ALPHA SMITH
Account Number: [redacted] 2152

### 1. ITEMS PURCHASED WITH THE PROCEEDS OF THE CREDIT TRANSACTION

| # | ITEM | DESCRIPTION | REPLACEMENT VALUE |
|---|------|-------------|-------------------|
|   |      |             |                   |
|   |      |             |                   |

### 2. ITEMS CURRENTLY OWNED BY THE BORROWER(S)

I (we) own __3__ television sets and __4__ radios and I (we) agree to offer as security the television and/or radios listed and described below (if any).          Borrower Initials

| # | ITEM | DESCRIPTION | REPLACEMENT VALUE |
|---|------|-------------|-------------------|
| 2 | TELEVISIONS >25" SCREEN | 36" SANYO AND DVD PLAYER | 2,000 |
| 1 | COMPUTER & ACCESSORIES | GATEWAY AND ALL ACCESSORIES | 4,000 |

I (we) hereby affirm that the replacement value of goods used as security on this credit transaction is $____6,000____

Date: _03/11/2004_  Borrower(s) Signature: _____

Borrower(s) Signature: _____

# ITEMIZATION OF AMOUNT FINANCED

01-0173

| Borrower(s) | Lender | Account Number |
|---|---|---|
| ALPHA SMITH<br>2913 MCFABBEN DR<br>TUSKEGEE AL 36083 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 | 2352<br>**Date of Loan**<br>03/11/2004 |

## ITEMIZATION OF AMOUNT FINANCED: $    7,879.73

$    2,006.85    Amount given to you directly (check to you) $    120.00   Prepaid finance charge
$    NONE      Amount paid on your prior account
$    5,872.88    Amount paid to others on your behalf (sum of schedules A through C)

### SCHEDULE A: PREMIUMS PAID TO INSURANCE COMPANIES
$    379.88      Credit Life
$    NONE      Credit Disability
$    NONE      Property Insurance
$    NONE      Automobile Single Interest
$    NONE      _____
$                 _____

### SCHEDULE B: PAID TO PUBLIC OFFICIALS
$    NONE      License/title/registration fees
$    NONE      Recording Fee
$                 Stamps/intangible/transfer tax
$    NONE      Release Fee
$                 _____

### SCHEDULE C: PAID TO OTHERS

| AMOUNT | PAYEE NAME | REASON |
|---|---|---|
| 2,716.00 | AMEX | PAYOFF OF ACCOUNT |
| 305.00 | CAP 1 BANK | PAYOFF OF ACCOUNT |
| 472.00 | HHLD BANK | PAYOFF OF ACCOUNT |
| 2,000.00 | ALPHA SMITH | OTHER |

ANY AMOUNTS LISTED IN SCHEDULE C, PAYABLE AS BROKER FEES, APPLICATION FEE, SETTLEMENT FEE, OVERNIGHT DELIVERY FEE, FLOOD CERTIFICATION FEE OR TAX SERVICE FEE ARE INCLUDED IN PREPAID FINANCE CHARGE AND NOT IN THE AMOUNT FINANCED.

21232-1.1 6/2003          Original (Branch)    Copy (Customer)