IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CITIFINANCIAL MORTGAGE COMPANY, INC., n/k/a CITIMORTGAGE, INC., | ) ) ) |
| PLAINTIFF, | ) ) ) |
| V. | ) CV: 3:06cv899-MHT ) |
| ALPHA SMITH and VERA M. SMITH, | ) ) ) |
| DEFENDANTS. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT ALPHA SMITH**

**COMES NOW** CitiFinancial Mortgage Company, Inc., n/k/a Citimortgage, Inc., ("Plaintiff" or "CitiFinancial Mortgage"), and hereby submits this Memorandum in Support of Its Motion for Summary Judgment on its Petition to Compel Arbitration of claims alleged against it by Defendant Alpha Smith (or "Defendant").[1] For the reasons set forth below, CitiFinancial Mortgage is entitled to judgment as a matter of law on its Petition to Compel the Defendant to arbitrate his claims against CitiFinancial Mortgage.

## I.   INTRODUCTION

This action is a Petition to Compel Arbitration, authorized by Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. Section 4. Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending. In this action, Plaintiff CitiFinancial Mortgage seeks an order compelling Defendant to submit to binding arbitration any and all claims

---

[1] At this time, CitiFinancial Mortgage is not moving for summary judgment as to Defendant Vera Smith, but it reserves its right to do so.

1514616 v3

Defendant may have against Plaintiff, pursuant to the Parties' arbitration agreement. This Petition is necessary because Defendant has violated an agreement to arbitrate any claims against CitiFinancial Mortgage by filing a lawsuit against CitiFinancial Mortgage in state court styled <u>Vera M. Smith and Alpha Smith v. First Capital Mortgage Corporation, The Associates, CitiFinancial Mortgage and Fictitious Defendants "A-Z"</u>, now pending in the Circuit Court of Macon County, Alabama, Civil Action Number CV-06-84 ("Underlying Action"). (A copy of the Complaint in the Underlying Action is attached to Plaintiff's Motion for Summary Judgment as Exhibit A).

## II.  STATEMENT OF UNDISPUTED FACTS

On March 11, 2004, Defendant Alpha Smith entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC ("CitiFinancial"), which is an affiliate of Plaintiff CitiFinancial Mortgage. (<u>See</u> Declaration of Teresa M. Baer, at Exhibit 1, attached to Plaintiff's Motion for Summary Judgment as Exhibit B). In the arbitration agreement, Defendant agreed to arbitrate any claims against CitiFinancial, <u>as well as any claims against CitiFinancial's affiliates, including claims he may have regarding a past credit transaction</u>. The agreement provides, in relevant part:

> In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.
>
> * * *
>
> "You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representative.

1514616 v3                                    2

**"We" or "Us" or "Our" means** the Lender under the Note listed above, **its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors**, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

**"Credit Transaction" means any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.**

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

* * *

**Special Acknowledgements.** You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appear an arbitration award are very limited.

1514616 v3                                3

(See Ex. B, at Ex. 1 (underlined and bolded emphasis added; bolded emphasis in original.))

On April 17, 2006, Alpha and Vera Smith (husband and wife) filed the Underlying Action against CitiFinancial Mortgage and "The Associates"[2] in the Circuit Court of Macon County. (See Ex. A). In their lawsuit, Alpha and Vera Smith assert claims against CitiFinancial Mortgage based on a loan transaction they entered into with First Capital Mortgage Corporation ("First Capital") in April of 1989. Defendants allege that First Capital represented to them that they were to make monthly payments of $312.00 until April, 2004, when their loan would then be paid off. Defendants claim that First Capital assigned the loan to Associates Financial Services, which ultimately became CitiFinancial Mortgage. CitiFinancial Mortgage is an affiliate of CitiFinancial, and it was an affiliate of CitiFinancial as of March 11, 2004. (See Ex. B, ¶ 5.) Defendants further allege that when they made what was supposed to be their last loan payment on April 17, 2004, they were erroneously informed by CitiFinancial Mortgage that they still owed $8,300. Defendants assert that their loan payments were not properly applied, and they did not owe $8,300. Defendants allege fraudulent misrepresentation, promissory fraud, negligent misrepresentation, and negligence. They seek an unlimited amount of compensatory and punitive damages, plus costs.

Because Defendant Alpha Smith agreed to arbitrate his claims against CitiFinancial and its affiliates in his March 11, 2004 loan -- including Plaintiff CitiFinancial Mortgage -- Plaintiff requests that this Court order Defendant Alpha Smith to arbitrate his claims filed in the Underlying Action, pursuant to the parties' arbitration agreement.[3]

---

[2] The correct name for "The Associates" is Associates Home Equity Services, Inc., which later became known as CitiFinancial Mortgage Company, Inc.

[3] CitiFinancial Mortgage needs discovery with respect to Defendant Vera Smith's dealings concerning the March 11, 2004 loan and arbitration agreement therein. CitiFinancial

### III.    ARGUMENT

A.    **This Court Has Diversity Jurisdiction Pursuant to 28 U.S.C § 1332.**

    1.    **There is Complete Diversity of Citizenship.**

CitiFinancial Mortgage Company, Inc. n/k/a Citimortgage, Inc., is a corporation organized and existing under the laws of the State of New York, with its principal place of business located within the State of Missouri. CitiFinancial Mortgage is, therefore, a citizen of the States of New York and Missouri. 28 U.S.C. §1332(c)(1).

Alpha and Vera Smith are citizens of the State of Alabama. Thus, there is complete diversity of citizenship between CitiFinancial Mortgage and the Smiths.

In their Response to CitiFinancial Mortgage's Petition to Compel Arbitration, Defendants argue that "Capital Mortgage"[4] is an Alabama corporation, and thus, its Alabama citizenship defeats diversity in this matter. However, "Capital Mortgage's" citizenship is irrelevant because it is not a party to this proceeding. Defendants also argue that the mortgaged property is located in Macon County, Alabama, and that the mortgage was entered into in Alabama. However, it makes absolutely no difference where the transaction in question was entered or where the mortgaged property is located. Section 1332 only requires that the parties be completely diverse. In this case, the Smiths and CitiFinancial Mortgage are the only parties to this Petition, and their citizenship is completely diverse.

    2.    **The Amount in Controversy is Met.**

---

Mortgage reserves the right to move for summary judgment on its Petition to compel Vera Smith's claims to arbitration after adequate discovery.

[4] Plaintiff assumes that Defendant is referring to First Capital Mortgage. While First Capital Mortgage is a defendant in the Underlying Action, it is not a party to the Petition to Compel Arbitration in this Court.

It cannot seriously be disputed that the amount in controversy in this action exceeds $75,000, exclusive of interests and costs. The amount in controversy in a petition to compel arbitration is determined by reference to the amount at issue in the Underlying Action on the claims subject to arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n.32 (1983) ("[S]ection 4 provides for an order compelling arbitration only where the federal district court would have jurisdiction over a suit on the underlying dispute"); accord We Care Hair Development, Inc. v. Engen, 180 F.3d 838, 840-41 (7th Cir. 1999); Webb v. Investacorp., 89 F.3d 252 (5th Cir. 1996). The amount in controversy in this case is well over $75,000, exclusive of interests and costs, as Defendants seek an unlimited amount of compensatory and punitive damages in the Underlying Action. (See Ex. A).

Because Defendants seek an unspecified amount of damages, Plaintiff is only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). CitiFinancial Mortgage has clearly satisfied this requirement in its Petition to Compel Arbitration by citing an abundance of Alabama decisions involving similar claims wherein plaintiffs were awarded damages in excess of $75,000. Federal courts in Alabama adjudicating similar claims have repeatedly acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319 (M.D. Ala. 2003) (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler v. Provident Life and Accident Insurance Co., 256 F. Supp. 2d 1243 (N.D. Ala. 2003) (same); Bullock v. United Benefit Ins. Co., 165 F.Supp.2d 1255, 1256 (M.D. Ala. 2001) (same). Therefore, the

numerous decisions and jury verdicts cited by CitiFinancial Mortgage in its Petition to Compel Arbitration are clearly sufficient for this Court to establish that the amount in controversy is satisfied in this matter. Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**B.    Plaintiff Is Entitled To Summary Judgment On Its Petition To Compel Alpha Smith's Claims To Arbitration.**

    **1.    Arbitration Agreements are Presumptively Valid under Federal Law.**

The Federal Arbitration Act ("FAA") establishes that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995). Through its passage of the FAA, Congress placed arbitration agreements "upon the same footing as other contracts." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)).

"[G]eneralized attacks on arbitration," Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." Id. at 481. Instead, Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the Act, have together created a strong federal policy favoring the enforcement of arbitration agreements. Indeed, these policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or

an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). It is against this backdrop of the strong federal policy of encouraging arbitration that the Court must evaluate the merits of Plaintiff's petition.

2. **All of the Prerequisites under the FAA for Enforcement of Arbitration Agreements are Satisfied in this Matter.**

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (i) the existence of a written agreement to arbitrate claims, (ii) a nexus to interstate commerce, and (iii) coverage of the claims by the arbitration clause. 9 U.S.C. § 2.

a. *There is a written agreement to arbitrate.*

As set forth above, it is without question that Defendant Alpha Smith entered into a written arbitration agreement in connection with the March 11, 2004 loan. (<u>See</u> Ex. B, at Ex. 1). As such, this requirement is easily met.

b. *The transaction at issue involved interstate commerce.*

Interstate commerce is clearly affected by the parties' transaction in this case. The interstate commerce analysis under the FAA is "not a rigorous inquiry; the contract need only be 'related to' commerce to fall within the FAA." <u>In the Matter of the Arbitration Between: Rans Chemical Lmtd. and China Nat'l Machinery Import and Export Corp.</u>, 978 F.Supp. 266, 300 (S.D. Texas 1997) (citing <u>Del E. Webb Constr. v. Richardson Hosp. Authority</u>, 823 F.2d 145, 147-148 (5th Cir. 1987) (rejecting the "substantial" contacts test in favor of "relating to" test in order to "implement[ ] the strong federal policy favoring arbitration.")). In addition, it is now beyond dispute that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'" <u>Camps Newfound/Owatonna, Inc. v. Town of Harrison</u>, 520 U.S. 564, 573 (1997). <u>See also Lewis v. BT Inv. Managers, Inc.</u>, 447 U.S. 27, 36 (1980); <u>Gibbons v. Ogden</u>, 22 U.S. (9 Wheat.) 1, 194, 6

L.Ed.23, 69 (1824). This is particularly true where it is money that is the "article" delivered, transferred, or moved across state lines. See, e.g., United States v. Owens, 159 F.3d 221, 226 (6th Cir. 1998); Staples v. Money Tree, Inc., 936 F. Supp. 856, 858 (M.D. Ala. 1996). See generally Ford Motor Co. v. Milhollin, 444 U.S. 555, 559-60 (1980) (discussing "commerce in credit" in connection with the federal Truth-in-Lending Act).

In Citizens Bank v. Alafabco, Inc., 539 U.S. 52 (2003), the Supreme Court held that "involving commerce" as used in the FAA is very broad -- equivalent to the most expansive use of Congress' Commerce Clause power. The Supreme Court stated:

> We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term "affecting commerce" -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" -- that is, "within the flow of interstate commerce . . . ."

Id. at 56 (citations omitted) (emphasis added). The Court also held that a debt-restructuring agreement was "a contract evidencing a transaction involving commerce" within the meaning of Section 2 of the FAA because Congress has the power to regulate such economic activity under the Commerce Clause. Id.

In addition, financing transactions -- like Defendant's March 11, 2004 loan with CitiFinancial -- are extensively regulated by Congress by virtue of its plenary powers under the Commerce Clause. For example, credit agreements such as the one in issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act and the FTC "holder in due course" rule, both of which have as their genesis the Commerce Clause.[5]

---

[5] See Mourning v. Family Publ'n Serv., 411 U.S. 356 (1973) (the power to enact the Truth-in-Lending Act was granted to Congress under the Commerce Clause); FTC v. P. Lorillard Co., 283 F. 999, 1002-03 (S.D.N.Y. 1922) aff'd, 264 U.S. 298 (1924) (the FTC's power to enact rules and regulations derives from Congress's power under the Commerce Clause).

There is no doubt that interstate commerce was involved in the March 11, 2004 loan. CitiFinancial is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland, (Ex. B, ¶ 3), and in the Underlying Action, Defendants allege that they are residents of the State of Alabama. Further, CitiFinancial funds its loans made in Alabama, including the March 11, 2004 loan at issue, with capital sources from outside the State of Alabama. (Ex. B. ¶ 4.) When a CitiFinancial loan transaction is closed, such as the March 11, 2004 loan at issue, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pittsburgh, Pennsylvania. (Id.) When CitiFinancial makes a loan to a customer, including Defendant Alpha Smith, the CitiFinancial employee processing the transaction inputs data into a nationwide computer system. (Id.)

Accordingly, there is no doubt that the transaction at issue involves interstate commerce pursuant to the FAA.

    c.    *The scope of the arbitration agreement encompasses the claims asserted.*

Finally, the March 11, 2004 arbitration agreement is plainly broad enough in scope to encompass Defendant Alpha Smith's claims against Plaintiff in the Underlying Action. When determining the scope of an arbitration provision, the Court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2nd Cir. 1987). Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989).

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). Furthermore, "in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." H.L. Fuller Constr. Co. v. Indus. Dev. Bd., 590 So. 2d 218, 222 (Ala. 1991).

The scope of the March 11, 2004 arbitration agreement clearly encompasses the claims that Defendant asserts in the Underlying Action. The arbitration agreement generally encompasses claims in connection with any past, present, or future loan transaction with CitiFinancial or any of its affiliates. The arbitration agreement defines "Credit Transaction" as "any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You." (Ex. B., at Ex. 1.) It defines "Us" as the Lender (CitiFinancial) and "its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents directors, and officers (whether acting in their corporate or individual capacity)." (Id.) It gives as specific examples of claims that it encompasses "[f]raud or misrepresentation," and "[a]ny act or omission by any of Us." Significantly, the Smiths' claims in the Underlying Action are for fraud and negligence regarding the amount the Smiths owe CitiFinancial Mortgage (an affiliate of CitiFinancial) concerning the 1989 loan (a past loan). As such, there is no doubt that the claims Defendants assert in the Underlying Action are encompassed by the scope of the March 11, 2004 arbitration agreement.

For all the reasons set forth above, this Court should compel Defendant Alpha Smith to arbitrate his claims against CitiFinancial Mortgage.

### 3.    CitiFinancial Mortgage Has Not Waived Its Right to Arbitration.

In general, arbitration policies are considered so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of **waiver**, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (emphasis added). "There is a presumption against finding that a party has waived the right to compel arbitration." Blue Ribbon Home Super Center, Inc. v. Bell, 821 So. 2d 186, 191 (Ala. 2001). "A party seeking to prove a waiver of a right to arbitrate carries a heavy burden, and the courts will not lightly infer a waiver of the right to compel arbitration." Id. at 192.

Defendants argue in their Response to Plaintiff's Petition to Compel Arbitration that CitiFinancial Mortgage's removal of the Underlying Action to federal court constitutes a waiver of its right to arbitrate. However, the Alabama Supreme Court has held that the removal of a case to federal court does not, by itself, indicate an abandonment of the right to arbitration. Blue Ribbon Home Super Center, 821 So. 2d at 192; Harper Village Home Center, Inc. v. Thomas, 882 So. 2d 811, 814 (Ala. 2003) (compelling arbitration and finding motion to compel arbitration meritorious despite prior removal of the action). Furthermore, the Alabama Supreme Court has ruled that a removing party does not waive its right to compel arbitration, particularly where it asserts the defense of arbitration in its notice of removal and its answer. U.S. Pipe and Foundry Co., Inc. v. Curren, 779 So. 2d 1171, 1175 (Ala. 2000); Jim Walter Resources, Inc. v. Argo, 779 So. 2d 1167 (Ala. 2000). That is precisely what CitiFinancial Mortgage did in the Underlying Action.

Defendants' waiver argument relies solely on the recent holding of <u>Ocwen Loan Servicing, LLC v. Washington</u>, 2006 WL 672845 (Ala. March 17, 2006), which is easily distinguishable from the instant action. In <u>Ocwen</u>, a single plaintiff, Willie Mae Washington ("Washington") entered into a loan with Morcap, Inc. secured by a mortgage on her residence in September of 1998. <u>Id</u>. at *1. Washington's mortgage was subsequently transferred to the defendant, Ocwen Loan Servicing, LLC ("Ocwen"), in 1999. <u>Id</u>. Washington executed an arbitration agreement in connection with the loan transaction in which she agreed to arbitrate "any claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction." <u>Id</u>.

In June of 2004, Washington sued Ocwen in the Hale County Circuit Court asserting a variety of claims relating to the propriety and disclosure of fees, penalties, and finance charges assessed and collected in originating and servicing her mortgage loan. <u>Id</u>. at *2. On September 27, 2004, Ocwen removed the action to United States District Court for the Southern District of Alabama and filed an answer. <u>Id</u>. at *7. <u>Neither the notice of removal nor the answer asserted Ocwen's right to arbitration.</u> <u>Id</u>. Ocwen then engaged in several litigation related steps: it requested that the action be transferred to a pending multidistrict litigation (MDL) in the United States District Court for the Northern District of Illinois; it thereafter filed in federal court in Alabama a motion to stay the proceedings pending a decision from the Judicial Panel on Multidistrict Litigation; and upon a conditional transfer order, Ocwen filed in the federal court in Alabama responses to Washington's opposition to the motion to stay, opposition to the motion to

transfer, and motion to remand. Id. The federal court in Alabama initially denied Washington's motion to remand, and there were several responsive motions filed by both parties related to the Court's decision. Id. Washington's motion to remand was ultimately granted on January 19, 2005. Id. at *2. On March 23, 2005 -- over two months later -- Ocwen filed a motion to compel arbitration pursuant to the arbitration agreement Washington signed in connection with her loan closing with Morcap. Id. Washington opposed Ocwen's motion to compel arbitration, contending, among other things, that Ocwen had waived its right to arbitrate by substantially invoking the litigation process. Id.

The Alabama Supreme Court agreed with Washington and determined that Ocwen had waived its right to arbitrate the claims. Id. at *10. The Court pointed to several factors it used in finding waiver. First, nothing in the record indicated that if Ocwen had been allowed to go forward in the proceedings in the United States District Court for the Northern District of Illinois (MDL), that it would have been in an arbitral, rather than a judicial, forum. Id. at *8. "Indeed, to the contrary, 28 U.S.C. § 1407(a) provides that 'civil actions involving one or more common questions of fact . . . pending in different districts . . . may be transferred to any district for coordinated or consolidated pretrial proceedings.'" Id. In other words, Ocwen specifically sought to have the case litigated in a judicial forum, the MDL. Second, the Court strongly emphasized that Ocwen "did not mention the prospect for demanding arbitration as part of the contemplated pretrial proceedings in this or any of the other cases Ocwen sought to have consolidated for federal multidistrict litigation." Id. at 10. In fact, Ocwen failed to even retain its right to arbitrate when it filed its answer in federal court. Id. at *9. Thus, the Court determined that, "given the substantial activity in the federal court, during which Ocwen fought diligently to secure to itself a forum antithetical to arbitration," combined with Ocwen's complete

failure to even "mention the prospect for demanding arbitration…unequivocally display[ed] an intent on Ocwen's part to litigate, not arbitrate" and distinguished this case from others in which similar activities had occurred. Id. at *10.

The facts of Ocwen are strikingly different from the current matter and the holding is, therefore, easily distinguishable. First and foremost, unlike Ocwen, CitiFinancial Mortgage specifically reserved its right to arbitrate the Defendants' claims in every single responsive pleading or motion, including its Notice of Removal, Answer and Response to Plaintiff's Motion to Remand. Under no circumstances can Defendants argue that he had no notice of CitiFinancial Mortgage's intent to demand arbitration -- it was stated in plain English on the first responsive pleading filed and all subsequent documents. The primary reason that the Ocwen Court denied the defendant's motion to compel arbitration is because the defendant never mentioned the prospect of demanding arbitration in its filings. This is simply not the case in the current matter and thus, it is clearly distinguishable from the holding of Ocwen.

Moreover, in Alabama, "[a] defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration," which is what CitiFinancial Mortgage was trying to do in removing the Underlying Action. See Thompson v. Skipper Real Estate Co., 729 So. 2d 287, 292 (Ala. 1999) (holding that moving to transfer venue and propounding written discovery requests not enough to constitute waiver). Therefore, CitiFinancial Mortgage did not waive its right to compel arbitration of the Defendant's claims.

In addition, CitiFinancial Mortgage did not substantially invoke the litigation process by its limited discovery that it served on the Smiths. Although there is no precise formula for determining what constitutes "substantial involvement in litigation," courts have held that even participating in the discovery process does not waive a party's right to arbitration. See Universal

1514616 v3

15

Underwriters Life Insur. Co. v. Dutton, 736 So. 2d 564, 569, n. 3 (Ala. 1999); Costa and Head (Atrium), LTD., v. Duncan, Inc., 486 So. 2d 1272, 1277 (Ala. 1986); Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437 (11th Cir. 1986) (holding that mere participation in discovery does not cause prejudice sufficient to constitute a waiver where the request for arbitration was timely). Instead, a party must demonstrate an intent to waive arbitration.

    CitiFinancial Mortgage has neither sought to take nor taken any depositions in this action. And although their response to CitiFinancial Mortgage's Petition to Compel Arbitration claims otherwise, the Smiths have never answered any of Plaintiff's Discovery Requests. In fact, once CitiFinancial Mortgage became aware that Defendant entered into an arbitration agreement with CitiFinancial, counsel for CitiFinancial Mortgage sent a letter to counsel for Defendants advising the Smiths that CitFinancial Mortgage would seek arbitration of the matter and instructing them not to answer the Discovery Requests. (A copy of the letter from counsel for CitiFinancial Mortgage to counsel for Defendants is attached to Plaintiff's Motion as Exhibit C). Such a limited involvement in discovery certainly does not rise to the level of a waiver. See Thompson v. Skipper Real Estate Co., 729 So. 2d 287, 292 (Ala. 1999) (holding that move to transfer venue and propounding written discovery requests not enough to constitute waiver); Terminix Int'l Co. Ltd. Partnership v. Jackson, 669 So. 2d 893, 896 (Ala. 1995) (holding that defendant had not waived right to arbitrate despite filing requests for admissions, interrogatories, and requests for production; taking two depositions, totaling over 100 pages; and taking part in three depositions taken by the Plaintiffs); Rager v. Liberty Nat'l Ins. Co., et al, 712 So. 2d 333, 336 (Ala. 1998) (right to arbitrate not waived even though defendant filed one set of interrogatories and two sets of requests for production). Accordingly, CitiFinancial Mortgage's participation in this litigation

does not rise to the level of "a substantial invocation of the litigation process" and does not constitute a waiver of its right to arbitrate.

Finally, the fact that CitiFinancial Mortgage did not move to compel arbitration until six (6) months after the Smiths filed their complaint in the Underlying Action also does not suffice to show waiver or prejudice. "A party claiming that another party has waived its right to arbitrate its dispute normally must show more than the mere passage of time." Ex parte Dyess, 709 So. 2d 447, 454 (Ala. 1997). A significant portion of that time was spent in Federal Court with the Smiths' motion to remand pending, when it would not be appropriate to file a case-dispositive motion such as a motion to compel arbitration. Additionally, the Alabama Supreme Court has held that a party does not waive its right to arbitrate despite filing its motion (19) nineteen months after the complaint was filed. See Jericho Management, Inc. v. Fidelity Nat'l Title Ins Co. of Tennessee, 811 So. 2d 514, 515 (Ala. 2001); see also, Jim Walter Resources, Inc. v. Argo, 779 So. 2d 1167 (Ala. 2000) (defendant did not waive right to arbitrate despite removing action to federal court since it asserted arbitration as affirmative defense in answer and referenced arbitration in removal notice and Rule 26(f) report -- even though it did not move to compel arbitration until just under one year after complaint filed); U.S. Pipe & Foundry Co., Inc. v. Curren, 779 So. 2d 1171 (Ala. 2000) (defendant did not waive right to arbitrate despite removing action to federal court since it asserted arbitration as affirmative defense in answer and referenced arbitration in removal notice and Rule 26(f) report -- even though it did not move to compel arbitration until over ten months after complaint filed); Thompson v. Skipper Real Estate Co., 729 So. 2d 287 (Ala. 1999) (defendant did not waive right to arbitrate despite moving to transfer venue, serving interrogatories, and taking depositions relating to venue and the merits of

plaintiff's claims -- even though it did not move to compel arbitration <u>over eleven months</u> after complaint filed).

Accordingly, any delay in filing this Petition to Compel Arbitration is minimal. Defendant has produced no evidence indicating that he has been substantially prejudiced by CitiFinancial Mortgage's involvement in the litigation process as is required to show waiver. <u>Jericho Management, Inc. v. Fidelity Nat'l Title Ins Co. of Tennessee</u>, 811 So. 2d 514, 516 (Ala. 2001). Indeed, the facts of this case reflect that CitiFinancial Mortgage did not "bespeak[] an intention to abandon the right [of arbitration] in favor of the judicial process." <u>First Family Financial Servs., Inc. v. Jackson</u>, 786 So. 2d 1121 (Ala. 2000). Accordingly, CitiFinancial Mortgage has not waived its rights to compel arbitration and its motion is due to be granted.

For all of the reasons set forth above, the Court should compel Defendant Alpha Smith's claims in the Underlying Action to arbitration.

                                                          Respectfully submitted,

                                                          <u>s/Elizabeth B. Shirley</u>
                                                          Reid S. Manley (MANLR6842)
                                                          Elizabeth B. Shirley (BOSQE5958)

                                                          Attorneys for Plaintiff CitiFinancial Mortgage Company, Inc., n/k/a Citimortgage, Inc.

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## **CERTIFICATE OF SERVICE**

    I hereby certify that on December 29, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that all counsel are registered in the CM/ECF system and should receive electronic notice.

s/Elizabeth B. Shirley
OF COUNSEL
