IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| CITIFINANCIAL MORTGAGE | ) | |
| COMPANY, INC., a/k/a, | ) | |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:06cv899-MHT |
| | ) | (WO) |
| ALPHA SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Citifinancial Mortgage Co. Inc., filed this
action against defendant Alpha Smith to compel him,
pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.
§§ 3 and 4, to arbitrate his state-court fraudulent
misrepresentation, promissory fraud, negligent
misrepresentation, and negligence claims against the
mortgage company.[1]  This court has jurisdiction over this

---

1. Citifinancial Mortgage's complaint also named
Vera Smith, but she was dismissed from this case on July
19, 2007 (Doc. No. 28).

case pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

Currently before the court is Citifinancial Mortgage's motion for summary judgment.  For the reasons set forth below, the motion will be granted.


I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II.  FACTS

On April 11, 1989, Smith and his wife executed a second mortgage with First Capital Mortgage on their home.  The Smiths believed that, under the terms of the loan, they were to make monthly payments of $ 312.00 until April 2004, when their loan would be paid off.  In November 2000, their mortgage was finally assigned to Citifinancial Mortgage.

On March 11, 2004, Smith executed a personal-loan transaction and arbitration agreement with Citifinancial Corporation, LLC, which is an affiliate of Citifinancial Mortgage.  In the arbitration agreement, Smith agreed to arbitrate any "claim" against Citifinancial and its "affiliates" that relate to any "credit transaction." "Credit transaction," as defined in the arbitration agreement, is "any one or more past, present, or future extensions, applications, or inquiries of credit

3

forbearance of payment such as a loan, retail credit
agreement, or otherwise from any of Us to You."[2]

_____

    2.  The March 2004 arbitration agreement provided
that:

> "In consideration of Lender making the
> extension of credit described in the
> instrument evidencing your loan ('Note')
> and other good and valuable
> consideration, the receipt and
> sufficiency of which is acknowledged by
> both parties, You or We have an absolute
> right to demand that any Claim be
> submitted to an arbitrator in accordance
> with this Arbitration Agreement.  If
> either You or We file a lawsuit,
> counterclaim, or other action in court,
> the other party has the absolute right
> to demand arbitration following the
> filing of such action.
>
>                     ***
>
> "'You' or 'Your' means any or all of
> Borrower(s) listed above and Non-
> Obligor(s) who execute the Note, and
> their heirs, survivors, assigns, and
> representative.
>
> "'We' or 'Us' or 'Our' means the Lender
> under the Note listed above, its past,
> present or future respective parents,
> subsidiaries, affiliates, predecessors,
> assignees, successors, and their
> respective employees, agents, directors,
>                          (continued...)

On April 17, 2004, the Smiths made what they believed was their last loan payment to Citifinancial Mortgage. However, Citifinancial Mortgage informed them that they still owed $ 8,300.00.

On April 18, 2005, Smith filed a Chapter 13 voluntary bankruptcy petition. Citifinancial made several appearances in the bankruptcy court defending its interests in the proceeding.

On April 17, 2006, the Smiths filed a lawsuit in an Alabama state court against Citifinancial Mortgage,

---

2.    (...continued)
      and officers (whether acting in their corporate or individual capacity).

      "'Credit Transaction' means any one or more past, present or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.

      "'Claim' means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to ... Any Credit Transaction ...."

5

alleging fraudulent and negligent misrepresentation, promissory fraud, negligence, and breach of contract regarding the April 1989 second mortgage.

On May 17, Citifinancial Mortgage removed the state-court action to bankruptcy court, but, on August 23, the bankruptcy court remanded it. During discovery in the bankruptcy proceedings, Citifinancial Mortgage discovered the March 2004 loan and arbitration agreement with Citifinancial Corporation where Smith agreed to arbitrate "past" credit transactions.

Consequently, on October 5, 2006, Citifinancial Mortgage filed this lawsuit in federal court seeking to compel Smith to arbitrate his claims in the state-court lawsuit.

### III. DISCUSSION

#### A. The FAA

The FAA provides that, "A party aggrieved by the alleged failure, neglect, or refusal of another party to

arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C § 4. Section 4 goes on to provide that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

As a general matter of federal policy, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 651 (1986) (reviewing dispute arising under

the Labor Management Relations Act) (internal quotation omitted); <u>see also Ruby-Collins, Inc. v. City of Huntsville, Alabama</u>, 748 F.2d 573, 576 (11th Cir. 1984) ("Federal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration.").

While federal policy favors arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which she has not agreed so to submit." <u>Steelworkers v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960). Accordingly, "the question whether the parties have submitted a particular dispute to arbitration, <u>i.e.</u>, the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002) (quoting <u>AT&T Technologies, Inc. v. Communications Workers</u>, 475 U.S. 643, 649 (1986)). Issues to be decided by the court "include certain

8

gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." <u>Green Tree Fin. Corp. v. Bazzle</u>, 539 U.S. 444 (2003).

## A.  Application of the FAA

Citifinancial Mortgage's argument in support of its motion for summary judgment is straightforward:  that the agreements between it and Smith included a written agreement to arbitrate.  Therefore, it argues, the court is required to compel arbitration under the FAA.   9 U.S.C. §§ 3 & 4.

On the other hand, Smith does not dispute that in March 2004 he signed an agreement to arbitrate claims against Citifinancial Corporation and its affiliates, nor does he dispute that the March 2004 agreement contains language that requires arbitration of any of his "past" credit transactions with Citifinancial Corporation and it

9

affiliates, which include Citifinancial Mortgage. However, he argues that when he executed agreement he had no intention to be bound by the arbitration agreement for purposes of his 1989 mortgage with First Capital.  He contends that the arbitration agreement is unconscionable, and, to support this contention, he submits that (1) he had no choice but to agree to the clause or else he would not have received his loan; (2) the terms of the agreement unreasonably favor Citifinancial Mortgage; (3) he is being forced to arbitrate based on a contract he signed 15 years after the original mortgage was initiated; (4) there was unequal bargaining power; (5) he is being denied his right to a jury trial; and (6), as a Chapter 13 debtor, he cannot afford to pay the costs of arbitration.

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A.

§ 2.  "Thus, generally applicable contract defenses, such
as fraud, duress, or unconscionability, may be applied to
invalidate arbitration agreements without contravening
§ 2." Doctor's Associates, Inc. v. Casarotto, 517 U.S.
681, 687, 116 S.Ct. 1652, 1656 (1996).  "Because Alabama
law allows unconscionability to invalidate contracts
generally, this defense may also invalidate the
arbitration agreement in his case if [Smith] proves
unconscionability by substantial evidence." Bess v.
Check Express, 294 F.3d 1298, 1307 (11th Cir. 2002).

The Alabama Supreme Court has defined an
unconscionable contract as one "'such as no man in his
sense and not under delusion would make on the one hand,
and as no honest and fair man would accept on the
other.'" Layne v. Garner, 612 So. 2d 404, 408 (Ala.
1992) (quoting Hume v. United States, 132 U.S. 406, 411
(1889)).  Traditionally, that court has applied four
factors to decide if a contract is unconscionable: "(1)
whether there was an absence of meaningful choice on one

party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided or patently unfair terms in the contract." <u>Layne</u>, 612 So.2d at 408. "For ease of discussion," the Alabama Supreme Court "reduce[d] the <u>Layne v. Garner</u> test further to one comprised of two essential elements: (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." <u>American Gen'l Fin., Inc. v. Branch</u>, 793 So.2d 738, 748 (Ala. 2001). As this court has previously observed, "at a minimum, a party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract." <u>Roberson v. Money Tree of Alabama, Inc.</u>, 954 F. Supp. 1519, 1525 (M.D. Ala. 1997) (Thompson, J.).

This court will therefore pose as its first question, What exactly has Smith unwillingly or unwittingly sacrificed or lost when he signed the March 2004 arbitration agreement that is so patently unfair and unreasonable as to be unconscionable?  In answering this question, the court must limit its review to the terms of the arbitration clause itself and how they are unconscionable to him:  "The precise question in this case ... is whether the arbitration clause is so unfavorable to [Smith] that it simply would not have been reasonable for him knowingly to accept it, given any meaningful choice," Roberson, 954 F. Supp. at 1525, and whether he "cannot obtain through arbitration the very same relief that would be otherwise available in a court action."  Id. at 1526.  A court must be wary of finding a contract unconscionable where the plaintiff is "left with some place to go."  In re Elkins-Dell Mfg. Co., 253 F. Supp. 864, 870 (E.D. Pa. 1966) (Lord, J.).

13

Smith has provided no evidence that enforcement of the arbitration agreement would cause him a specific injury; nor has he demonstrated that enforcement of the clause will strip him of a remedy that he could access through adjudication of his claims by a court. In other words, Smith does not argue that the relief he seeks is unavailable to him through arbitration. See Roberson, 954 F. Supp. at 1526 ("[the plaintiffs] have not argued that an arbitrator cannot hear liability claims against the defendants or cannot award the full panoply of relief available in state courts under Alabama law."). Thus, the court cannot conclude that the arbitration clause here is unconscionable.

Smith contends that requiring him to resolve his disputes with Citifinancial Mortgage through arbitration would deprive him of his Seventh Amendment right to a trial by jury. Once again, the court finds his contention unconvincing. In order to demonstrate that his jury-trial right was violated, a plaintiff must show

14

that the arbitration clause itself is unconscionable,
such that "the arbitrator cannot hear his claims against
[the defendants], or cannot award the full panoply of
relief available in state courts under Alabama law."
Goodwin v. Ford Motor Credit Co., 970 F. Supp. 1007, 1015
(M.D. Ala. 1997) (Thompson, J.).  Absent such a showing,
federal arbitration policy, as announced by the Supreme
Court in Allied-Bruce Terminix Cos., Inc. v. Dobson, 513
U.S. 265, 280-82 (1995), requires the court to presume
that, by signing the agreement, the plaintiff knowingly
and intelligently waived his right to a jury trial.
Because the court has already concluded that the
arbitration agreement Smith signed in conjunction with
his 2004 loan transaction with Citifinancial Corporation
was not unconscionable, it cannot conclude that Smith's
right to a jury trial was unlawfully abridged.

Smith argues that, as a Chapter 13 debtor, he cannot
afford the cost of arbitration.  However, he provides
nothing to support this contention.  Arbitration is

15

generally considered a less expensive method of resolving disputes.  See, e.g., Allied-Bruce, 513 U.S. at 280 ("Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation. ... The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of times and places of hearings and discovery devices...") (internal citations and quotations omitted).  Yet, Smith does not indicate how arbitration will be more expensive than litigating his claims in state court.  Smith has not demonstrated any circumstances particular to his case that the costs associated with arbitration would render his agreement to arbitrate clause unconscionable so as to preclude arbitration of his claims.

16

Smith asserts that Citifinancial Mortgage has already waived its right to arbitrate.  For sure, "[a]n agreement to arbitrate, 'just like any other contract ..., may be waived.'"  Ivax Corp. v. B. Braun of America, Inc., 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting Burton-Dixie Corp. v. Timothy McCarthy Const. Co., 436 F.2d 405, 407 (5th Cir. 1971)).  Indeed, the FAA provides that litigation may be stayed pending arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration," 9 U.S.C. § 3, and the Eleventh Circuit has "clarified that the term 'default' carries the same meaning as 'waiver.'"  Ivax Corp., 286 F.3d at 1315 n.17.

The Eleventh Circuit Court of Appeals has established a two-part test to determine whether a party has waived its right to arbitrate.  First, the court must decide "if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right.'"  Ivax Corp., 286 F.3d at 1315-16 (quoting S & H

17

Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)).  Smith argues that Citifinancial Mortgage acted inconsistently with its right to arbitration when it appeared in the bankruptcy court and when it removed the state-court proceeding to bankruptcy court.  In the state-court and bankruptcy proceedings, Citifinancial Mortgage raised its right to arbitrate in each of its responsive pleadings and motions, including its notice of removal, answer, and response to Smith's motion to remand.  Additionally, it did not discover the 2004 arbitration agreement with Citifinancial Corporation until September 2006, and, at that time, it promptly informed Smith of its intent to seek arbitration.  Up until that time, only limited discovery had been commenced; neither party had taken any depositions, and Smith has never answered any of Citifinancial Mortgage's discovery requests.  The court concludes that Citifinancial did not act inconsistently with its intent to arbitration.

Second, to find waiver to arbitrate, the court looks at whether the party seeking arbitration has in some way prejudiced the other party.  <u>Ivax Corp.</u>, 286 F.3d at 1316.  There must therefore be some evidence that Smith has been prejudiced by Citifinancial Mortgage's failure to seek arbitration earlier.  Even if the court were convinced that Citifinancial Mortgage acted inconsistently, that inconsistency has not prejudiced Smith.  Smith says that he has been prejudiced because he has expended time and financial resources litigating this case in both state and federal court; he contends that Citifinancial Mortgage has been forum shopping for the past seven months at his expense.  However, as soon as Citifinancial Mortgage discovered the 2004 arbitration agreement, it notified Smith of its intent to seek arbitration.  Moreover, even before Citifinancial Mortgage discovered the 2004 agreement, it preserved its right to seek arbitration in its pleadings.  The court

19

cannot find any prejudice to Smith traceable to Citifinancial Mortgage's alleged inconsistency.

Finally, Smith has failed to show that Citifinancial Mortgage had "overwhelming bargaining power." <u>American Gen'l Fin.</u>, 793 So.2d at 748.  It is undoubtedly true that Citifinancial Mortgage has greater resources than does Smith and that the mortgage company would be unlikely to bend to his demands in negotiation.  However, in discussing the "overwhelming bargaining power" element of its test for unconscionability, the Alabama Supreme Court framed the inquiry as "whether the consumer has the ability to obtain the product made the basis of the action without signing an arbitration clause."  <u>Id</u>. at 750 (internal quotation omitted).  The court would not be surprised if most mortgage-company agreements were subject to arbitration provisions, but Smith has made no showing on this issue.

20

In sum, Smith has not established that the March 2004 arbitration agreement between Citifinancial Mortgage and him is unconscionable under Alabama law.

**\* \* \***

For the foregoing reasons, Citifinancial Mortgage's motion for summary judgment will be granted.  An appropriate judgment will be entered to that effect.

DONE, this the 20th day of August, 2007.


    /s/ Myron H. Thompson    
**UNITED STATES DISTRICT JUDGE**

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

                                                                    *Rev.: 4/04*

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).